OPINION
{¶ 1} Appellant Damon Irby was convicted in Mahoning County Court No. 4 on one count of domestic violence, a first degree misdemeanor. Appellant argues that his conviction following a bench trial is against the manifest weight of the evidence, and that his Crim.R. 29 motion for acquittal should have been granted at the close of the state's case when the state failed to establish an in-court identification of Appellant. He also argues that the state's only witness, the victim Lorain Clinkscale ("Lorain"), failed to positively identify Appellant during trial. Appellant has pointed to no authority that would require the record to specifically state that the defendant has been positively identified in court. The testimony of the victim provided ample evidence of Appellant's identity as the perpetrator of the crime, and the judgment of the trial court is hereby affirmed.
 {¶ 2} On December 27, 2002, Lorain went to a nightclub in Austintown Township, Ohio, called "the Mill." Soon afterward, Appellant entered the club, threatened Lorain and assaulted her. Lorain and Appellant formerly lived together and had two children together. Lorain reported the incident to the police and Appellant was charged with one count of domestic violence in violation of R.C. § 2919.25(A), a first degree misdemeanor. The complaint was filed in Mahoning County Court No. 4, in Austintown, Ohio.
 {¶ 3} Appellant was arrested on January 14, 2003. The trial court held a bench trial on February 13, 2003. The only two witnesses at trial were the victim and Appellant. Lorain testified that she and Appellant lived together for seven years and had two children together. (Tr., p. 24.) Although the parties had stopped living together in October of 2002, Lorain testified that they were still sleeping together during the period in which the crime occurred. (Tr., p. 24.) Lorain testified that approximately five minutes after she arrived at the Mill, Appellant entered the club. (Tr., p. 8.) She first heard Appellant's voice, then looked up and recognized him standing just a few inches from her face. (Tr., p. 9.) Appellant told Lorain that she was going to get her ass kicked, that she would not make it out of the bar, and that he would kill her. (Tr., p. 10.) Appellant spit into Lorain's face, hit her twice in the face with his hand, grabbed her shirt, broke her necklace, and poured a bottle of beer into her hair. (Tr., pp. 11-13.) Appellant then walked away. Lorain was very frightened, upset, and started crying. (Tr., pp. 11-12.) A friend of Lorain's drove her to a Youngstown Police Department station, and the officers there directed her to go to the police station in Austintown, where she reported the crime. (Tr., p. 14.) Although the Austintown police report confirms Lorain's testimony, this report was not relied upon at trial.
 {¶ 4} After Appellant's counsel cross-examined Lorain, the state rested its case. Appellant moved for acquittal pursuant to Crim.R. 29. (Tr., p. 29.) The motion was denied. Appellant then took the stand. Appellant testified that he was not at the Mill on December 27, 2002, and that he did not go to such clubs because it would have violated his probation from a federal criminal conviction. (Tr., p. 35.) Appellant testified that he was convicted of falsifying a federal form regarding information about a firearm. (Tr., pp. 35-36.)
 {¶ 5} After Appellant finished testifying, the state recalled Lorain to the stand. Lorain testified that Damon Irby, her former live-in spouse, was the person who threatened her and slapped her, and she positively identified him in the courtroom. (Tr., pp. 40-41.) At this point, Appellant's attorney objected to the in-court identification. (Tr., p. 40.) The trial court overruled the objection. After Lorain completed her identification, the state rested.
 {¶ 6} On February 24, 2003, the trial court filed its judgment. The court found Appellant guilty of one count of domestic violence, sentenced him to 180 days in jail, with credit for 40 days served and the remainder suspended. The court also imposed a $100.00 fine and 12 months of probation. This timely appeal followed on March 26, 2003.
 {¶ 7} Appellant presents two assignments of error, which will be treated in reverse order. Appellant's second assignment of error asserts:
 {¶ 8} "The trial court erred as a matter of law to the prejudice of the appellant and abused its discretion when it overruled appellant's Criminal Rule 29 motion and thereby denied appellant due process of law."
 {¶ 9} Appellant contends that the state rested its case at trial without establishing the in-court identification of Appellant as the perpetrator of the crime. At the close of the state's case, Appellant's counsel moved for dismissal pursuant to Crim.R. 29. (Tr., p. 29.) The motion was denied, and Appellant was called as a witness. After Appellant's testimony was complete, the prosecutor recalled Lorain, who positively identified Appellant as the man who committed the crime. (Tr., p. 40.) Appellant's counsel then objected that the prosecutor was attempting to prove an essential element of the crime after the state had closed its presentation of evidence. (Tr., p. 40.) The trial court overruled the objection, and Lorain completed her identification. Appellant contends that an essential element of the crime was omitted from the state's case at the time that Appellant's counsel first asked for acquittal under Crim.R. 29, and for this reason, the case should have been dismissed at that time.
 {¶ 10} The elements of the crime of domestic violence that Appellant violated are found in R.C. § 2919.25(A), which states:
 {¶ 11} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 12} Appellee identifies three errors in Appellant's argument. First, Appellee contends that Appellant waived this argument by not clarifying to the trial court the nature of his Crim.R. 29 motion for acquittal during trial. Appellee is correct in this assertion. An error that is not called to the attention of the trial court at the time when the error could have been avoided or corrected is usually treated as a waived error on appeal. State v. Hill (2001), 92 Ohio St.3d 191, 196,749 N.E.2d 274. Counsel did not specify the reason for asserting the Crim.R. 29 motion. The trial judge responded by stating: "That will be denied. There's testimony there were two slaps involved, and they were uncontroverted at this point, so proceed with your case." (Tr., p. 29.) The trial court apparently thought that Appellant was questioning whether the "physical harm" element of the crime had been proven. Appellant's counsel did not respond to the trial court's explanation, and did not attempt to clarify his motion for acquittal. If counsel had objected to the lack of an in-court identification when he asserted his motion to acquit, the trial court might have ruled differently or addressed the problem at that time.
 {¶ 13} Appellee's second argument is that Appellant has not cited any authority establishing that an in-court identification is an element of the crime of domestic violence. Appellee correctly asserts that, under App.R. 16(A)(7), an appellant's brief is required to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, andparts of the record on which appellant relies." (Emphasis added.) If the appellant does not cite any appropriate legal authority to support its argument, this may be treated as a waiver of the argument on appeal. State v. Tuck (2001),146 Ohio App.3d 505, 510, 766 N.E.2d 1065; Meerhoff v. HuntingtonMtge. Co. (1995), 103 Ohio App.3d 164, 169, 658 N.E.2d 1109. Once again, we agree with Appellee that Appellant has not provided any authority to substantiate his argument on appeal and has waived the alleged error on appeal.
 {¶ 14} Appellee's third argument is that there is no general requirement in criminal cases that the defendant must be visually identified in court by a witness. Appellee is correct. Any type of direct or circumstantial evidence may be used to establish the identity of the person that committed the crime. State v.Bridge (1989), 60 Ohio App.3d 76, 77, 573 N.E.2d 762. In fact, an in-court identification is a less reliable indicator of identity than many other types of identification:
 {¶ 15} "`Both experience and psychological studies suggest that identifications consisting of nonsuggestive lineups, photographic spreads, or similar identifications, made reasonably soon after the offense, are more reliable than in-court identifications.'" State v. Reaves (1998), 130 Ohio App.3d 776,783, 721 N.E.2d 424, fn. 6, quoting comments to F.Evid.R. 801(d)(1)(C), 1975 Report of the Senate Committee on the Judiciary.
 {¶ 16} This Court itself has held that an in-court identification is not required in criminal cases:
 {¶ 17} "The general rule is that to warrant conviction the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime. 23 C.J.S. Criminal Law § 920, p. 643; 1 Wharton's Criminal Evidence, Twelfth Edition, 46; 1 Underhill's Criminal Evidence, Fifth Edition, 243. 23 C.J.S. Criminal Law § 920, p. 645, states:
 {¶ 18} "`The probative value of an identification depends on the circumstances under which it was made. * * *
 {¶ 19} "`* * * It is not necessary that the identification be made positively by a witness, * * *. Lack of positiveness does not destroy the value of the identification, but goes to the weight of the testimony. * * *
 {¶ 20} "* * *
 {¶ 21} "`Identity may be established by direct evidence, but direct evidence of identification is not required; circumstantial evidence may be sufficient to establish the identity of accused as the person who committed the crime, * * *. The circumstances proved must, however, lead to but one fair and reasonable conclusion pointing to accused to the exclusion of all others as the guilty person and exclude every other reasonable hypothesis except that of accused's guilt. * * *.'" State v. Scott (1965),3 Ohio App.2d 239, 244-245, 210 N.E.2d 289.
 {¶ 22} The record reveals that Appellant was sufficiently identified as the perpetrator of the crime prior to the closing of the state's case in chief. The trial judge identified that Appellant was in the courtroom, and identified him by name. (Tr., p. 4.) The victim testified that she lived with Appellant for seven years and that they had two children together. (Tr., pp. 5-6.) The victim testified that she recognized Appellant at the nightclub by his voice and by looking at him. (Tr., p. 9.) There is no question that the victim was talking about Appellant, and that she was in a position to know his identity. Based on the evidence in the record, Appellant's second assignment of error is overruled.
 {¶ 23} Appellant's first assignment of error states:
 {¶ 24} "The trial court denied appellant due process under the Fourteenth Amendment due to fact that his conviction against the manifest weight of the evidence and the trial court's verdict was inconsistent with the evidence and testimony presented at trial."
 {¶ 25} Appellant contends that the verdict was against the manifest weight of the evidence. Appellant cites State v.Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus, for the following rule:
 {¶ 26} "In determining whether the decision of a trial court is against the manifest weight of the evidence, the following factors are guidelines to be taken into account by the reviewing court:
 {¶ 27} "1. The reviewing court is not required to accept as true the incredible;
 {¶ 28} "2. whether the evidence is uncontradicted;
 {¶ 29} "3. whether a witness was impeached;
 {¶ 30} "4. what was not proved;
 {¶ 31} "5. the certainty of the evidence;
 {¶ 32} "6. the reliability of the evidence;
 {¶ 33} "7. whether a witness' testimony is self-serving;
 {¶ 34} "8. whether the evidence is vague, uncertain, conflicting or fragmentary."
 {¶ 35} Appellant offers the following factors in an attempt to prove that the verdict was against the manifest weight of the evidence and was insufficient to support the verdict. First, the state relied only on one witness to prove its case. Second, Appellant contradicted Lorain's testimony and denied that he was at the Mill on the night of the crime. Third, it would be illogical for Appellant to have gone to the Mill because it would have violated the terms of his probation. Fourth, Appellant should have been believed because he willingly admitted his prior convictions. Fifth, Lorain had reason to falsify her testimony because she was upset with Appellant for ending his romantic relationship with her. Sixth, it is not credible to think that Lorain never asked for help during the alleged violent encounter with Appellant. According to Appellant, this aspect of Lorain's testimony should have made the trial court wary of her entire testimony. Seventh, Lorain's testimony about her first interaction with the police on the night of the crime was not credible. Appellant does not find it believable that a person would fail to tell the police all the details of the alleged crime, or would leave before filing a police report. Eighth, there were no police reports, medical reports or other witness statements to support Lorain's testimony. It is Appellant's contention that the crime never happened.
 {¶ 36} It is apparent from Appellant's argument that he is challenging both the sufficiency and the manifest weight of the evidence. Sufficiency of the evidence and manifest weight of the evidence are related but distinct legal concepts:
 {¶ 37} "A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541; State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. In reviewing such a challenge, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 38} "A claim that a jury verdict is against the manifest weight of the evidence, on the other hand, involves a separate and distinct test which is much broader. `"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541, quotingMartin, 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717."State v. Scott, 101 Ohio St.3d 31, 2004-Ohio-10,800 N.E.2d 1133, ¶ 31-32.
 {¶ 39} The reviewing court must first be satisfied that there is sufficient evidence to support the conviction before dealing with the question of the manifest weight of the evidence.Thompkins at 388, 678 N.E.2d 541. Appellee points out that a reversal based on the manifest weight of the evidence should only be invoked in rare and extraordinary circumstances when the evidence presented weighs heavily against conviction. Id. at 387. Further, when addressing a manifest weight of the evidence issue, a reviewing court must keep in mind that questions of weight and credibility are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366,227 N.E.2d 212.
 {¶ 40} As far as Appellant's concern that the state only presented one witness, it is clear that a criminal conviction may be upheld on the testimony of a single witness, as long as all the elements of the crime have been proven beyond a reasonable doubt. State v. Sandy (1982), 6 Ohio App.3d 37, 38,452 N.E.2d 515.
 {¶ 41} Appellant was convicted of violating R.C. §2919.25(A), which states: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." The statute further defines "family or household member" as: "[a]ny of the following who is residing or has resided with the offender: (i) A spouse, a person living as a spouse, or a former spouse of the offender[.]" R.C. § 2919.25(F)(1)(a). Finally, the statute defines "person living as a spouse" as: "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. § 2919.25(F)(2).
 {¶ 42} Lorain testified that she and Appellant lived together for seven years, had stopped living together in October of 2002, had two children together, and were still sleeping together immediately prior to the night of the crime. These facts establish that Appellant qualified as a "person living as a spouse" because he cohabitated with the victim within five years prior to the date of the crime. Lorain also testified that Appellant threatened to kill her, hit her twice, grabbed her, and spit on her. When these facts are considered in a light most favorable to the prosecution, they satisfy the elements of the crime of domestic violence and provide sufficient evidence to support the conviction.
 {¶ 43} The manifest weight of the evidence also supports the conviction. Although Appellant testified that he was not at the Mill nightclub on the night of the crime, he also testified that he was convicted of making a false statement on a federal application for a firearm. (Tr., pp. 35-36.) Appellant's own testimony demonstrated that he had serious credibility problems. Appellant believes that his credibility was enhanced because he admitted his prior crimes during his testimony. The fact that Appellant admitted his prior crimes is not necessarily proof of his credibility, as he only admitted his crimes on cross-examination by the prosecutor and through further questioning by the court.
 {¶ 44} Appellant is correct that some of the evidence may have tended to undermine Lorain's credibility. If the trial court believed that she was upset when her relationship with Appellant ended, this might support an inference that she filed the complaint merely as a way to get back at Appellant. The fact that such an inference was possible, though, does not mean that the trier of fact was required to make the inference.
 {¶ 45} Lorain's testimony about her interaction with the police on the night of the crime does not necessarily undermine her credibility, as Appellant contends. She encountered a police officer outside the Mill who was busy dealing with someone else, so she left to go to a police station in Youngstown. The Youngstown police told her that she should report the incident in Austintown because the crime occurred in Austintown, so she went to the Austintown police station. Lorain was upset at the time and simply wanted to tell her story to someone in authority who would listen. Although Appellant interprets these facts as highly questionable, Lorain's story may also be interpreted as completely reasonable and normal.
 {¶ 46} The manifest weight of the evidence clearly supports the guilty verdict. For this reason, Appellant's first assignment of error is overruled.
 {¶ 47} Neither of Appellant's assignments of error has merit, and the judgment of the Mahoning County Court No. 4 is affirmed in full.
Vukovich, J., concurs.
DeGenaro, J., concurs.