OPINION
{¶ 1} Appellant, Jeremy Dean Harris, appeals his conviction in the Butler County Court of Common Pleas for the robbery of Ronald Davis, and the robbery and murder of Jeffrey Wilson. We affirm the decision of the trial court.
 Robbery of Ronald Davis {¶ 2} On December 16, 2006, Ronald Davis was working as a delivery man for Domino's Pizza. At approximately 10:15 p.m., Davis was sent to deliver a pizza to 934 *Page 2 
Ridgelawn Avenue located in Hamilton, Ohio; a non-existent address. Davis drove to the area and parked his car in front of 918 Ridgelawn, the only house that had a light on at the time. Davis got out of the car and carried the pizza down the street as he looked for the delivery address. After he passed two or three houses, a man wearing a hooded sweatshirt came towards him on the sidewalk. As the man approached, he asked how much the pizza cost. As Davis checked the price of the pizza, the man struck him on the left side of his face. The blow knocked his glasses off and caused his ear to bleed. Davis eventually fell to the ground after the man hit him several more times on his face and neck. The attacker searched Davis' pockets, took all the money he could find, and ran off down the street.
 {¶ 3} After the attacker left, Davis grabbed the pizza box, drove back to Domino's, and reported the robbery to the police. A few days later, the police arrived at Davis' house and conducted a photo line-up in an effort to identify his attacker. Davis did not recognize his attacker from any of the photos that the police provided. Appellant's photo was not part of the photo array.
 {¶ 4} Later that week, the local newspaper ran a story about the December 19, 2006 robbery and murder of Jeffrey Wilson, a pizza delivery man for Donatos Pizza. Davis looked at the photos that accompanied the story, one being appellant, and immediately recognized the picture of appellant as his attacker. Davis told his wife that he recognized appellant. However, Davis did not inform the police he recognized appellant until a few days before the start of trial.
 Robbery and Murder of Jeffrey Wilson {¶ 5} On December 19, 2006, Jeffrey Wilson was working as a delivery man for Donatos Pizza. Wilson was sent to make a delivery to 1450 Biscayne Drive, later determined to be a vacant residence, located in Hamilton, Ohio. Shortly after leaving Donatos, Wilson was found dead, lying in the intersection of Biscayne and Flamingo Drive. Wilson had *Page 3 
sustained injuries to his face, including a broken nose and a cut above his right eye. The cause of death was later determined to be a heart attack brought on by the stress of the attack.[1]
 {¶ 6} The subsequent investigation led the police to appellant, to his indictment for the robbery of Davis, and the robbery and murder of Wilson. The police were able to connect the crimes by tracing the call made to Domino's to a cell phone used by Elizabeth Dykes, appellant's girlfriend, that he borrowed from her earlier that day. Dykes later provided statements to police implicating appellant.
 {¶ 7} A jury found appellant guilty of robbing Davis, and of robbing and murdering Wilson. Appellant appeals his conviction, advancing two assignments of error. For ease of discussion, appellant's assignments of error will be addressed out of order.
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT CONVICTED HIM OF THE DECEMBER 16, 2006 ROBBERY."
 {¶ 10} Appellant argues that the trial court erred when it convicted him of robbing Davis. Essentially, appellant asserts that there is insufficient evidence to support the robbery conviction. This argument lacks merit.
 {¶ 11} In reviewing the sufficiency of the evidence to support a criminal conviction, a reviewing court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 273. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a *Page 4 
reasonable doubt. Id.
 {¶ 12} In order to warrant a conviction, the evidence presented must establish beyond a reasonable doubt the identity of the accused as the person who actually committed the crime. State v. Lawwill, Butler App. CA2007-01-014, 2008-Ohio-3592, ¶ 11. The identity of the accused may be established by direct or circumstantial evidence. Id., citing State v.Irby, Mahoning App. No. 03 MA 54, 2004-Ohio-5929, ¶ 16-21. Ohio courts have "long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. McKnight,107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75, quoting State v. Heinish (1990),50 Ohio St.3d 231, 238. "Circumstantial evidence" is "the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts." Lawwill at ¶ 12, citing State v. Wells, Warren App. No. CA2006-02-029, 2007-Ohio-1362, ¶ 11.
 {¶ 13} Appellant was charged with robbing Davis, in violation of R.C. 2911.02(A)(2), a second-degree felony. R.C. 2911.02(A)(2) states in pertinent part:
 {¶ 14} "(A) No person, in attempting or committing a theft offense * * *, shall do any of the following:
 {¶ 15} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another."
 {¶ 16} While the jury found appellant guilty, appellant claims that there was insufficient evidence presented at trial to support the robbery conviction. Specifically, appellant argues that there was insufficient evidence to establish appellant's identity as Davis' attacker. In support of this claim, appellant argues that Davis was attacked in a dimly lit area, the attacker was wearing a hood covering his head, Davis did not have optimal vision at the time of the attack, Davis' glasses were knocked off his face during the attack, and Davis' identification lacks credibility because he did not notify the police immediately after he recognized a photograph of appellant in the newspaper. *Page 5 
 {¶ 17} However, our review of the record indicates that the state presented evidence, which, if believed by the trier of fact, was sufficient to support a finding that the state proved the elements of robbery beyond a reasonable doubt.
 {¶ 18} First, although Davis testified that it was a dark at the time, he also testified that he kept his car headlights on, and that the car headlights actually "light a fairly good area." Further, Davis testified that the attacker stood in the beam of the headlights as he approached him on the sidewalk. Davis also stated that the hood worn by the attacker only covered the attacker's hair, and did not cover his face.
 {¶ 19} Second, Davis' vision impairment, a cataract that has since made him blind in one eye, did not significantly hinder his ability to see, and later identify, his attacker. As Davis testified, he had 20/20 vision in his right eye and was only impaired 25 percent in his left eye at the time of the robbery.
 {¶ 20} Third, simply because Davis was not wearing his glasses after the initial blow fails to account for the time that he was wearing his glasses. Specifically, Davis was wearing his glasses when his attacker approached him on the sidewalk, and when they stood face to face, a mere arm's length away, immediately before the attack occurred. Based on these facts, a reasonable person could conclude that Davis had the ability to see and identify his attacker.
 {¶ 21} Appellant also argues that Davis' identification lacks credibility because Davis waited several months before he told police that he identified his attacker as appellant from the photograph in the newspaper. However, the delay is insignificant as it relates to the sufficiency of the state's evidence.
 {¶ 22} Davis' failure to inform the police immediately does not indicate his inability to identify his attacker from the newspaper photograph, from the attack itself, or even from seeing appellant in court. As Davis testified, he did not inform police because he assumed *Page 6 
the police were already aware of appellant's involvement in the December 16 robbery. This incorrect assumption, however, did not affect Davis' ability to identify appellant as his attacker. When asked on cross-examination, Davis testified that he was 100 percent sure that his attacker was appellant.
 {¶ 23} The foregoing evidence, if believed by the trier of fact, is sufficient to support a finding that appellant committed the charged offense beyond a reasonable doubt, and therefore, appellant's second assignment of error is overruled.
 {¶ 24} Assignment of Error No. 1:
 {¶ 25} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO CONDUCT A HEARING REGARDING THE ADMISSIBILITY OF THE TESTIMONY FROM BOTH THE PATHOLOGIST AND THE CORONOR REGARDING THE VICTIM'S CAUSE OF DEATH."
 {¶ 26} Appellant argues that the trial court erred when it refused to conduct a hearing to determine the admissibility of testimony from two state witnesses; Dr. James Swinehart, a forensic pathologist, and Dr. Richard Burkhardt, the Butler County Coroner, regarding the cause, manner, and mode of Wilson's death. Specifically, appellant argues that he was entitled to a pre-trial hearing, often referred to as aDaubert hearing, [2] to determine the admissibility of evidence from the proposed expert witnesses because the theory of death was not tested and subject to peer review. We disagree.
 {¶ 27} A motion in limine, such as appellant's motion to exclude expert testimony, is "a *Page 7 
tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue."State v. Baldev, Butler App. No. CA2004-05-106, 2005-Ohio-2369, ¶ 11, quoting State v. Grubb (1986), 28 Ohio St.3d 199, 201-203. A motion in limine is "directed to the inherent discretion of the trial judge, about an evidentiary issue that is anticipated, but has not yet been presented in full context." Wilhoite v. Kast, Warren App. No. CA2001-01-001, 2001-Ohio-8621, 2002 WL 4524 at *9, citing Grubb at 201. The trial court's ruling on a motion in limine does not preserve the record on appeal. Baldev at ¶ 11. Instead, "any claimed error regarding a trial court's decision on a motion in limine must be preserved at trial by an objection, proffer, or ruling on the record * * *." Id. Failing to object to the admissibility of the evidence at trial waives any error except plain error. Id.
 {¶ 28} Appellant failed to renew the objection denying his request for a pre-trial Daubert hearing at trial. In turn, because appellant did not properly object at trial, he waived any challenge to the denial of the pre-trial Daubert hearing except for plain error.
 {¶ 29} An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different.Baldev at ¶ 12; State v. Krull, 154 Ohio App.3d 219, 2003-Ohio-4611, at ¶ 38. "Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Baldev at ¶ 12, citing State v. Long (1978), 53 Ohio St.2d 91,95. Further, even if "evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt."State v. Murphy, Butler App. No. CA2007-03-073, 2008-Ohio-3382, ¶ 29, citing State v. Williams (1983), 6 Ohio St.3d 281, 290.
 {¶ 30} Determining whether a witness may provide expert testimony "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to *Page 8 
the facts in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc.
(1993), 509 U.S. 579, 113 S.Ct. 2786, 2796. However, the United States Supreme Court recognized in Kumho Tire Co., Ltd. v. Carmichael (1999),526 U.S. 137, 119 S.Ct. 1167, that "[t]he trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable." Kumho Tire at 152. In turn, "[the abuse of discretion] standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion." Id., citing General Elec. Co. v. Joiner (1997),522 U.S. 136, 118 S.Ct 512. Therefore, a trial court is not required to hold a pre-trial Daubert hearing. See State v. Fulton, Clermont App. No. CA2002-10-085, 2003-Ohio-5432, ¶ 13-19 (finding no error in trial court's decision to deny pretrial Daubert hearing on the admissibility of evidence).
 {¶ 31} According to the record, appellant filed a motion in limine asking the trial court to exclude expert testimony and provide a pretrial Daubert hearing to determine whether the proposed expert testimony was admissible under Evid. R. 702. Appellant argued that the experts' theory of death was not tested and subject to peer review. The trial court denied the motion in limine.
 {¶ 32} In denying appellant's motion, the trial court noted that appellant provided no evidence that the proposed expert testimony was based on "something other than the normal science and pathology * * *." The trial court continued by stating, "[i]f there is some information that would indicate they relied on some other junk science or some non-reliable type of science, then there may be an issue that the Court would have to visit prior to trial." However, appellant could not provide any information to indicate the proposed expert testimony did not comply with the requirements of Evid. R. 702. As a result, the trial court determined a pretrial Daubert hearing was unnecessary and that any issues with regard to the *Page 9 
proposed expert testimony could easily be resolved at trial. We find no error in this conclusion.
 {¶ 33} After reviewing the record, we find that the trial court did not err in denying appellant's pretrial motion for a Daubert hearing. As a result, appellant has not established plain error, and therefore, appellant's first assignment of error is overruled.
 {¶ 34} Judgment affirmed.
WALSH, P.J. and BRESSLER, J., concur.
[1] The specific cause of death, as noted on the Certificate of Death, was "cardiac arrhythmia due to or as a consequence of physical assault."
[2] Appellant claims that the trial court did not fulfill its role as gatekeeper as described in Daubert v. Merrell Dow Pharmaceuticals,Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786, when it denied appellant a hearing to determine the reliability, and the ultimate admissibility, of Dr. Swinehart's and Dr. Burkhardt's testimony. In Daubert, the Supreme Court "interpreted Fed.R.Evid.702, the federal version of Evid. R. 702, as vesting the trial court with the role of gatekeeper. This gatekeeping function imposes an obligation upon a trial court to assess both the reliability of an expert's methodology as well as the relevance of any testimony offered before permitting the expert to testify. [The Ohio Supreme Court] adopted this role for Ohio trial judges in Miller v. BikeAthletic Co. (1998), 80 Ohio St.3d 607 * * *." (Internal citations omitted.) Terry v. Caputo, 115 Ohio St.3d 351, 2007-Ohio-5023, ¶ 24.
PGPage 1