[Cite as *State v. Napier*, 2017-Ohio-246.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2016-04-022 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 1/23/2017 |
| - vs - | | |
| | : | |
| JOSHUA NAPIER, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2015 CR 374

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Gary A. Rosenhoffer, 313 East Main Street, Batavia, Ohio 45103, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Joshua Napier, appeals his conviction and sentence in the Clermont County Court of Common Pleas. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} On June 30, 2015, the Clermont County Grand Jury returned a one-count indictment charging Napier with assault against a peace officer in violation of R.C. 2903.13(A), a fourth-degree felony. The charge stemmed from an altercation that occurred

at Midtown Tavern in Felicity, Ohio. Napier entered pleas of not guilty and not guilty by reason of insanity based upon his affliction with post-traumatic stress disorder ("PTSD"). The trial court referred Napier to the Court Clinic, which verified Napier's diagnosis. However, the Court Clinic found that Napier did not meet the criteria to raise the defense of not guilty by reason of insanity.

{¶ 3} Prior to trial, appellee filed a motion in limine seeking to preclude Napier from introducing evidence of his PTSD or prior military service. Following a hearing on the matter, the trial court granted appellee's motion. Shortly thereafter, the case was tried before a jury, which rendered a verdict of guilty to the charge. During trial, the court sustained an objection by the state when Napier attempted to elicit testimony regarding his PTSD. Further, the trial court declined Napier's request to give jury instructions regarding certain affirmative defenses and lesser included or inferior offenses. The record revealed the following facts.

{¶ 4} The altercation between Napier and Officer Seng occurred in the morning hours of June 21, 2015; however, the two crossed paths earlier in the afternoon on June 20, 2015. The first interaction occurred when Officer Seng conducted a traffic stop on a vehicle in which Napier was a passenger. Napier's significant other, Falisha McCann, was the driver of the vehicle. After conducting routine traffic stop procedures, such as requesting identification from the occupants, Officer Seng released the occupants with a verbal warning.

{¶ 5} Later that night, McCann and Napier accompanied some friends to Midtown Tavern, a local bar in Felicity, Ohio. Napier had been consuming alcohol throughout the evening and McCann was the designated driver. During the course of the evening at Midtown Tavern, Napier expressed his discontent and frustration with the traffic stop from earlier in the day, and more specifically, with Officer Seng. Napier communicated these feelings to two tavern patrons, Sydney Grant and Alexandria Mefford. Grant testified that Napier threatened to punch Officer Seng in the face. Following this discussion, Grant, an

acquaintance of Officer Seng, sent him a text message informing him of the interaction with Napier. Officer Seng took this information under advisement.

{¶ 6} Approximately 30 minutes later, Napier was involved in an incident that caused physical damage to the trim of the bar top. In response, the bartender, Brandon Byus, informed Napier that he ought to finish his drink and head home. After finishing his drink, Napier, McCann, and Napier's friend, Michael Wehrum, exited the tavern and began to walk home. Shortly after the three exited, Officer Seng arrived at the Midtown Tavern to conduct a "bar check," a procedure typically executed to help handle any issues that may arise near closing time. At this time, Officer Seng was on duty, arrived in uniform, and parked his marked police cruiser outside of the tavern. Upon entering the tavern, Officer Seng was informed that Napier was asked to leave following the damage to the bar top trim.

{¶ 7} Officer Seng observed the damage and began to further investigate. In the course of his investigation, Officer Seng noticed Napier and Wehrum walking down the sidewalk approximately three blocks from the tavern. Next, Officer Seng entered his police cruiser, activated its lights, and pulled behind McCann's vehicle, which was following along with Napier and Wehrum. Officer Seng began to discuss the bar incident with Napier. In response, Napier expressed his discontent with Officer Seng and threatened to harm him, as well as denied any wrongdoing with regard to the damage to the bar top. Following this interaction, Napier began to walk back towards the tavern, disregarding Officer Seng's warnings that Napier may be charged with various citations if he did not stop. Napier entered the tavern and began to discuss the events with Byus.

{¶ 8} Next, Officer Seng entered the tavern and approached Napier, informing him that he was being removed from the tavern and placed him in the escort position. A struggle ensued, followed by a single punch thrown by Napier striking Officer Seng, resulting in a gash on Officer Seng's nose and loss of blood. The struggle continued after the punch until Officer

Seng was able to secure Napier with the assistance of a tavern patron.

{¶ 9}   In rendering its guilty verdict, the jury made two individual findings regarding the victim, Officer Seng.  The jury found that at the time of the assault Officer Seng was both: (1) a peace officer, and (2) that he was carrying out his official duties.  The trial court sentenced Napier to twelve months in prison.  Napier now appeals.

{¶ 10}  Assignment of Error No. 1:

{¶ 11}  THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF NAPIER WHEN IT GRANTED THE STATE'S MOTION IN LIMINE AND PREVENTED NAPIER FROM PRESENTING RELEVANT AND ADMISSIBLE EVIDENCE AS A DEFENSE.

{¶ 12}  Assignment of Error No. 2:

{¶ 13}  THE TRIAL COURT COMMITTED PREJUDICAL ERROR WHEN IT REFUSED TO CHARGE THE JURY ON INFERIOR AND/OR LESSER INCLUDED OFFENSES.

{¶ 14}  Assignment of Error No. 3:

{¶ 15}  THE TRIAL COURT COMMITTED PREJUDICAL ERROR WHEN IT FAILED TO CHARGE THE JURY AS TO SUBSTANTIVE LAW RELEVANT TO THIS CASE.

{¶ 16}  Assignment of Error No. 4:

{¶ 17}  THE TRIAL COURT COMMITTED PREJUDICAL ERROR WHEN IT EXCLUDED RELEVANT AND MATERIAL EVIDENCE.

{¶ 18}  The purpose and effect of a motion in limine is distinct from that of a motion to suppress.  "A 'motion to suppress' is defined as a '[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally[;]'" thus, it "is the proper vehicle for raising constitutional challenges based on the exclusionary rule * * *."  (Citations omitted.) *State v. French*, 72 Ohio St.3d 446, 449 (1995), quoting *Black's Law Dictionary* (6th Ed.1990) 1014.  "A 'motion in limine' is defined as '[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to

[the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury.'" *French* at 449, citing *Black's Law Dictionary*, *supra*, at 1013. The purpose of a motion in limine "is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial * * *." *Black's Law Dictionary*, *supra*, at 1013-14.

{¶ 19} "A motion in limine * * * is 'a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of [an] evidentiary issue.'" *State v. Harris*, 12th Dist. Butler No. CA2007-11-280, 2008-Ohio-4504, ¶ 27, quoting *State v. Grubb*, 28 Ohio St.3d 199, 201-02 (1986). "A motion in limine is directed to the inherent discretion of the trial judge, about an evidentiary issue that is anticipated, but has not yet been presented in full context." (Citation omitted.) *State v. Harris*, 12th Dist. Butler No. CA2007-11-280, 2008-Ohio-4504, ¶ 27. It is important to note that not all motions in limine are alike. *See State v. Shalash*, 12th Dist. Warren No. CA2014-12-146, 2015-Ohio-3836, ¶ 30-31.

{¶ 20} A definitive or exclusionary motion in limine is the functional equivalent of a motion to suppress, which determines the admissibility of evidence with finality. *State v. Johnston*, 2d Dist. Montgomery No. 26016, 2015-Ohio-450, at ¶ 16, citing *French* at 450. Specifically, granting a definitive or exclusionary motion in limine not only prevents evidence from being introduced, but also prevents any mentioning of the excluded evidence during trial. *Johnston* at ¶ 16, citing *State v. Echard*, 9th Dist. Summit No. 24643, 2009-Ohio-6616, ¶ 20. A motion in limine may be used in this regard "to suppress evidence that is either not competent or improper due to some unusual circumstance not rising to the level of a constitutional violation." *Johnston* at ¶ 16, citing *French* at 450. "'The essential difference between a [motion to suppress] and a motion in limine is that the former is capable of resolution without a full trial, while the latter requires consideration of the issue in the context of the other evidence.'" (Emphasis deleted.) *Johnston* at ¶ 17, quoting *State v. Hall*, 57 Ohio App.3d 144, 146 (8th Dist.1989).

{¶ 21} We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 14. "A reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *Id.*, citing *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 33. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Boles* at ¶ 14.

{¶ 22} In this case, the ruling was not the functional equivalent of a motion to suppress. It is clear from the trial court's decision and entry on the state's motion in limine that the trial court did not determine with finality the admission of evidence of Napier's PTSD or prior military service. Specifically, the trial court stated:

> [i]t is premature to rule that the PTSD evidence is to be precluded altogether. If it is used for some other recognized purpose, other than a diminished-capacity defense, it may be relevant. Presently, the Court has nothing before it at this point to rule on its admissibility for some other purpose.
>
> If the evidence regarding [Napier's] PTSD is determined to be relevant during the actual context of the trial in this matter, the Court will not exclude it * * *.

Here, the trial court determined that evidence of Napier's PTSD diagnosis was inadmissible in regards to presenting a diminished-capacity defense. However, the trial court reserved ruling on the admissibility of the evidence for a different purpose until it could give consideration of the issue in the context of the other evidence presented at trial. With respect to Napier's prior military service, the trial court questioned the relevancy of the evidence. Nonetheless, the trial court specifically stated "permanent preclusion of this evidence is not warranted at this point" and that any ruling, "is anticipatory in nature and may be changed when the issue of admissibility of any evidence is presented in the actual context of the trial." Therefore, the trial court intended to prevent the injection of irrelevant and

- 6 -

inadmissible evidence into the trial, which is the precise purpose of a motion in limine, but did not prevent any mention of it at trial with finality.

{¶ 23} The trial court found that Napier intended to present evidence of his PTSD diagnosis and prior military service as a defense to the intent element of his charge; therefore, Napier intended to present a diminished-capacity defense. The trial court did not abuse its discretion in preventing the admission of such evidence for this purpose because Ohio "jurisprudence definitively states that the partial defense of diminished capacity is not recognized in Ohio." *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, ¶ 66. "Thus, when a defendant does not assert an insanity defense, it is well settled that he may not offer expert testimony in an effort to show that he lacked the mental capacity to form the specific mental state required for a particular crime." *Id.* at ¶ 67.

{¶ 24} Napier argues that the intent element of his assault charge could have been negated because his conduct was a "simple reaction" due to his PTSD. However, the trial court correctly found this argument unconvincing because it demonstrates the exact limitation in offering such evidence as explained in *Fulmer*. Napier did not qualify for a not guilty by reason of insanity defense; therefore, he may not offer expert testimony to negate his capacity to form the specific mental state required for assault.

{¶ 25} Napier further argues that Ohio recognizes PTSD as a standalone defense. In support of this argument, Napier relates PTSD to battered woman syndrome and asserts that the syndrome has been found to be a standalone defense. However, the Ohio Supreme Court case Napier cites to support this argument does not support this proposition. Rather, the case states that evidence of battered woman syndrome is relevant in the context of establishing the second element of self-defense, as discussed below. *See State v. Koss*, 49 Ohio St.3d 213, 217-18 (1990). Moreover, the court in *Koss* definitively stated the "admission of expert testimony regarding the battered woman syndrome does not establish a

- 7 -

new defense or justification." *Koss* at 217.

{¶ 26} Additionally, Napier asserts two instances where PTSD has been recognized as a standalone defense. *See State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, ¶ 29; *State v. Rivera-Carrillo*, 12th Dist. Butler No. CA2001-03-054, 2002 WL 371950, *14 (Mar.11, 2002). However, neither case supports such proposition with respect to PTSD. Rather, *Haines* permitted presenting such evidence to prove a victim's state of mind upon a credibility challenge and *Rivera-Carrillo* found that it may be relevant as evidence demonstrating a defendant was "under the influence of sudden passion or sudden fit of rage," as it relates to voluntary manslaughter. *Haines* at ¶ 29; *Rivera-Carrillo* at *14.

{¶ 27} Next, Napier requested the trial court give jury instructions on PTSD, self-defense, a defendant's right to resist an unlawful arrest, and excessive force. However, "[a] trial court is not required to instruct the jury on [an affirmative defense] in every case where it is attempted to be presented. The defendant must first present sufficient evidence at trial to warrant such an instruction." *State v. Evegan*, 12th Dist. Warren No. CA97-08-091, 1999 WL 559694, *2 (Aug. 2, 1999), citing *City of Bucyrus v. Fawley*, 50 Ohio App.3d 25, 26-27 (3d Dist.1988). "In reviewing the record to ascertain the presence of sufficient evidence to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 35, citing *State v. Risner*, 120 Ohio App.3d 571, 574 (3d Dist.1997). If the trial court finds that the evidence is legally insufficient to raise the issue, it will remove the issue from jury consideration. *Evegan* at *2. We review this decision for an abuse of discretion. *Id.*

{¶ 28} As discussed above, Ohio does not recognize PTSD as a standalone defense; therefore, the trial court did not abuse its discretion by not providing the jury with instructions

on it as a standalone defense. Next, to establish the affirmative defense of self-defense, a defendant must prove by a preponderance the following three elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray, (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) that the defendant did not violate any duty to retreat or avoid danger. *State v. Ray*, 12th Dist. Butler No. CA2012-10-213, 2013-Ohio-3671, ¶ 26, citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

{¶ 29} Here, the trial court did not err by not instructing the jury on self-defense. Even assuming Napier had sufficiently proven the second element of self-defense by presenting evidence regarding his PTSD and prior military service, the trial court found that Napier would have failed to establish the first element of self-defense because Napier was clearly at fault in creating the situation giving rise to the affray in that he broke the bar top and was told to stay out of the tavern and not return. The record supports the trial court's finding as testimony revealed that Napier disregarded Officer Seng's instruction and returned to the tavern; thereby, creating the situation requiring Officer Seng to reenter the tavern.

{¶ 30} In addition to jury instructions regarding his PTSD and self-defense, Napier argues the trial court erred by failing to give his requested instructions regarding excessive force by a police officer and a defendant's right to resist an unlawful arrest. Jury instructions in a criminal case "must be given when they are correct, pertinent, and timely presented." *State v. Joy*, 74 Ohio St.3d 178, 181 (1995). "A trial court must fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *Davis* at ¶ 27, citing *State v. Comen*, 50 Ohio St.3d 206, paragraph two of the syllabus (1990). A reviewing court may not reverse a criminal conviction based upon jury instructions unless "it is clear that the jury instructions constituted

prejudicial error." *Davis* at ¶ 28. "An appellate court's duty is to review the instructions as a whole, and, if taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." *Id.*

{¶ 31} Napier argues that since his arrest was unlawful, the jury should have been instructed that it may find Napier lawfully resisted arrest. However, as Napier was never charged with resisting arrest, the instruction was not relevant or necessary for the jury to discharge its duty as the fact-finder. (Emphasis sic.) *State v. Corbin*, 12th Dist. Fayette No. CA2010-01-001, 2010-Ohio-3819, ¶ 13, n.1 ("a lawful arrest is *not* an element of assault on a peace officer"), citing *State v. Peer*, 2d Dist. Montgomery No. 19104, 2002-Ohio-4198, ¶ 10. Even assuming arguendo Napier's arrest was unlawful, it would not justify assaulting Officer Seng. Thus, the trial court did not abuse its discretion by not giving an instruction on lawfully resisting arrest.

{¶ 32} Next, Napier argues the trial court erred by not giving an instruction on excessive force because the jury should have been given an opportunity to find that Officer Seng's use of force was wholly unnecessary. Excessive force is an affirmative defense to a resisting arrest charge, and as discussed above, Napier was not charged with resisting arrest; therefore, the trial court did not abuse its discretion by not instructing the jury on the defense. *See Village of Blanchester v. Newland*, 12th Dist. Clinton No. CA83-07-008, 1984 WL 3426, *3 (Sept. 17, 1984) (stating that excessive or unnecessary force is a judicially created defense to the crime of resisting arrest), citing *City of Columbus v. Fraley*, 41 Ohio St.2d 173, paragraph three of the syllabus (1975), *certiorari denied*, 423 U.S. 872, 96 S.Ct. 138. Moreover, even viewing this argument as providing factual support for the second element of self-defense, it does not negate that Napier was still at fault in creating the situation giving rise to the affray. Therefore, the trial court did not abuse its discretion with

respect to not instructing the jury on PTSD, self-defense, a defendant's right to resist an unlawful arrest, and excessive force.

{¶ 33} Finally, Napier argues that the trial court erred by not instructing the jury on the lesser included or inferior degree offenses of assault and disorderly conduct. "A jury instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction on the lesser included offense." *State v. Tolle*, 12th Dist. Clermont No. CA2014-06-042, 2015-Ohio-1414, ¶ 11, citing *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 192. There must be "sufficient evidence" to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis deleted.) *Trimble* at 192. In making its decision, the trial court must view the evidence in a light most favorable to the defendant. *Id*. We review this decision for an abuse of discretion. *State v. Doby*, 12th Dist. Butler No. CA2013-05-084, 2014-Ohio-2471, ¶ 17.

{¶ 34} Napier requested a jury instruction on assault pursuant to R.C. 2903.13(A) and 2903.13(B). R.C. 2903.13(A) provides that: "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." R.C. 2903.13(B) provides that: "[n]o person shall recklessly cause serious physical harm to another * * *." If convicted under either section, a defendant is guilty of assault; therefore, neither section is a lesser included or inferior degree offense of the other. *See State v. Deem*, 40 Ohio St.3d 205, 209 (1988) (defining lesser included offense as an offense having a penalty of lesser degree than the indicted offense and which, as statutorily defined, also being committed, and some element of the greater offense is not required to prove the commission of the lesser offense); *see id.* (defining an inferior degree offense as one with identical elements, except for one or more additional mitigating elements).

{¶ 35} In this case, the jury verdict form required the jury to make separate findings as

to the charge of assault pursuant to R.C. 2903.13(A) and the enhancing factor that the victim was a peace officer pursuant to R.C. 2903.13(C)(5). The trial court also instructed the jury that "[i]f your verdict is guilty as to the charge of assault in this case you will also separately decide beyond a reasonable doubt the additional element of whether the victim in this matter was a peace officer at the time of the offense." The trial court further explained that the jury may find Napier guilty of assault pursuant to R.C. 2903.13(A), while finding that Officer Seng was not a peace officer in the performance of his official duties at the time of the offense. Therefore, contrary to Napier's claim otherwise, the trial court did instruct the jury on the inferior degree offense of assault pursuant to R.C. 2903.13(A) and did not abuse its discretion by not instructing the jury on assault pursuant to R.C. 2903.13(B).

{¶ 36} Napier further argues that the trial court erred by not instructing the jury on the lesser included offense of disorderly conduct. In order to warrant an instruction on the lesser included offense of disorderly conduct, the trial court would have had to find that "(1) the jury could have reasonably concluded that [Napier] did not knowingly cause or attempt to cause physical harm to Officer [Seng] but instead (2) recklessly caused inconvenience, annoyance or alarm by engaging in violent or turbulent behavior." *State v. Beard*, 12th Dist. Butler No. CA98-02-019, 1998 WL 857856, *2 (Dec. 14, 1998).

{¶ 37} Here, the evidence indicated that Napier punched Officer Seng in the nose followed by a struggle between the two until Napier was subdued with the assistance of a tavern patron. As a result of this punch, Officer Seng's nose sustained a large gash and loss of blood. Given these facts, the jury could not reasonably have found Napier not guilty of assault, but guilty of the lesser offense of disorderly conduct. *See State v. Keith*, 10th Dist. Franklin Nos. 08AP-28 and 08AP-29, 2008-Ohio-6122, ¶ 38 (finding lesser included jury instruction on disorderly conduct not warranted where defendant injured police officers by engaging and throwing them to the floor); *State v. Thacker*, 4th Dist. Lawrence No. 04CA18,

2005-Ohio-1227, ¶ 8-13 (finding lesser included jury instruction on disorderly conduct not warranted where defendant caused physical injuries to the victim). Therefore, the trial court did not abuse its discretion by not giving jury instructions on the aforementioned lesser included or inferior degree offenses.

{¶ 38} Accordingly, Napier's first, second, third, and fourth assignments of error are overruled.

{¶ 39} Assignment of Error No. 5:

{¶ 40} THE TRIAL COURT COMMITTED PREJUDICAL ERROR WHEN IT SENTENCED NAPIER TO THE OHIO PENAL SYSTEM.

{¶ 41} In his final assignment of error, Napier argues that his sentence is clearly and convincingly contrary to law because the trial court should have imposed community control and it did not consider Napier's prior military service and PTSD in determining his sentence.

{¶ 42} R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; *accord State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to R.C. 2953.08(G)(2), when hearing an appeal of a trial court's felony sentencing decision, "[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing."

{¶ 43} As explained in *Marcum*, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." *Marcum* at ¶ 9. Rather, pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b). A sentence is not "clearly and convincingly contrary to

law where the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8, citing *State v. Moore*, 12th Dist. Clermont No. CA2014-02-016, 2014-Ohio-5191, ¶ 6. Furthermore, if a sentence imposed does not require any of the statutory findings identified in R.C. 2953.08(G)(2), an appellate court will nonetheless conduct a review of the sentence "under a standard that is equally deferential to the sentencing court." *Marcum* at ¶ 23.

{¶ 44} In the present case, a jury found Napier guilty of assault of a peace officer, a fourth-degree felony. For a fourth-degree felony, a sentencing court may impose a prison term from six to eighteen months. R.C. 2929.14(A)(4). "R.C. 2929.13(B)(1)(a) sets forth a presumption for community control if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence." *State v. Hughes*, 12th Dist. Butler No. CA2013-05-081, 2014-Ohio-1320, ¶ 11. R.C. 2929.13(B)(1)(A) provides:

> Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction of at least one year's duration if all of the following apply:
>
> (i) The offender previously has not been convicted of or pleaded guilty to a felony offense.
>
> (ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.
>
> (iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(iv) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.

{¶ 45} Here, the presumption of community control is inapplicable because Napier was convicted of an offense of violence as defined by the statute. R.C. 2901.01(A)(9)(a) (defining "offense of violence" as a violation of R.C. 2903.13). Furthermore, pursuant to R.C. 2929.13(K)(4), a "qualifying assault offense" means a violation of R.C. 2903.13 for which the penalty provision in division (C)(8)(b) or (C)(9)(b) of that section applies. Neither apply in this case because Napier's assault offense was not against hospital personnel or a judge, magistrate, prosecutor, or court official or employee. *See* R.C. 2903.13(C)(8)(b); R.C. 2903.13(C)(9)(b); R.C. 2903.13(D)(14). Therefore, contrary to Napier's assertion, R.C. 2929.13(B)(1)(a) does not apply. However, R.C. 2929.13(B)(2) provides that "[i]f division (B)(1) of this section does not apply * * *, in determining whether to impose a prison term as a sanction for a felony of the fourth or fifth degree, the sentencing court shall comply with * * * [R.C. 2919.11] and [R.C. 2929.12]."

{¶ 46} After a thorough review of the record, we find no error in the trial court's decision to sentence Napier to a prison term. The record reflects that Napier's sentence is not clearly and convincingly contrary to law because the trial court properly considered the principles and purposes of R.C. 2929.11 and the factors listed in 2929.12, imposed the required optional three-year postrelease control term, and sentenced Napier within the permissible statutory range for a fourth-degree felony. Napier further argues that the trial court failed to consider his prior military service and any mental, emotional, or physical condition derived therefrom, as required by R.C. 2929.12(F). However, the record does not support Napier's argument because the trial court stated at sentencing that not only had it reviewed R.C. 2929.11 and R.C. 2919.12, but also that it considered Napier's PTSD

condition, and concluded that community control was not warranted at that time. Moreover, the record clearly demonstrates the trial court considered Napier's prior military service by thanking him for his service, while also stating that such service did not excuse the offense of violence that occurred.

{¶ 47} Therefore, because we find Napier's sentence is not clearly and convincingly contrary to law, and because the record fully supports the trial court's sentencing decision, Napier's fifth assignment of error is overruled.

{¶ 48} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.