OPINION
{¶ 1} Defendant-appellant Joseph Yonis appeals his conviction and sentence entered in the Perry County Municipal Court on one count of misdemeanor vehicular homicide. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 13, 2004, appellant was operating his vehicle in a southbound direction on State Route 93. At the same time, Bobbie Jo Goodin was operating her vehicle on State Route 669, approaching the intersection of State Routes 669 and 93. As Goodin's vehicle entered the intersection, appellant's vehicle collided with her vehicle.
 {¶ 3} Goodin's nine year-old daughter died as a result of injuries sustained in the collision. She was not wearing her seat belt at the time of the accident.
 {¶ 4} Appellant was charged with misdemeanor vehicular homicide, a first-degree misdemeanor. Following a jury trial, appellant was found guilty of the charge and sentenced to 30 days incarceration. Appellant now appeals, assigning as error:
 {¶ 5} "I. THE TRIAL COURT ERRED WHEN IT ADMITTED EVIDENCE OF THE APPELLANT'S SKID MARKS TO PROVE HIS SPEED TO THE JURY WHEN THE EVIDENCE ESTABLISHED THAT APPELLANT'S CAR HAD ANTI-LOCK BRAKES.
 {¶ 6} "II. APPELLANT'S CONVICTION SHOULD BE OVERTURNED FOR INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
 {¶ 7} "III. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO A HARSHER SENTENCE FOR EXERCISING HIS RIGHT TO A TRIAL.
 {¶ 8} "IV. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO REHABILITATE ITS WITNESSES WITH OPINION TESTIMONY FROM A NON — EXPERT."
 I {¶ 9} In his first assignment of error, appellant argues the trial court erred in admitting skid mark evidence offered to prove his speed at the time of the accident. We disagree.
 {¶ 10} We note, the admission or exclusion of evidence rests within the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 11} At trial, the State offered the testimony of Trooper Fred Cook of the Ohio State Highway Patrol. Trooper Cook testified, based on the evidence at the scene, the skid marks observed at the accident scene came from the left front tire of appellant's vehicle. He stated the pre-collision skid marks made by the left front tire measured 104 feet. He conceded another skid mark was found at the scene, but did not match the other physical evidence; therefore, it was ruled out as having been a product of the subject accident.
 {¶ 12} Appellant's counsel did not object to this evidence; thereby waiving all but plain error. An error not raised in the trial court must be plain error for an appellate court to reverse. State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804; Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating the outcome of the trial clearly would have been different but for the error.Long, supra. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 13} Appellant argues, because his vehicle was equipped with anti-lock brakes, the skid marks could not have been left by his vehicle. However, appellant did not offer any testimony regarding anti-lock brakes relative to the presence of skid marks left at the scene of the accident.[1] Upon our review, we find no abuse of discretion in admitting the skid-mark evidence. Further, Trooper Cook testified he considered the anti-lock brakes when calculating the speed prior to impact as somewhere between 86 and 89 miles per hour.
 {¶ 14} Keeping in mind the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact, a review of the record demonstrates the State presented overwhelming evidence of appellant's speed:
 {¶ 15} Melissa Gill testified she was at the Crooksville High School track at the time of the crash, and she had an open view of the crash. She opined appellant was "going over 85 mph at the minimum" just prior to impact.
 {¶ 16} Anthony Skeens testified he was traveling at 55mph on State Route 93, when appellant passed him "like he was standing still." Skeens estimated appellant's speed to be at least 90 mph.
 {¶ 17} Brian Carney testified he was traveling northbound on State Route 93 when appellant's car passed his just before the crash. He stated appellant was going "at least 80 miles per hour."
 {¶ 18} Most significantly, Jeff Redfern, a passenger in appellant's own vehicle, testified he was riding in the front passenger seat of the vehicle at the time of the crash. He opined appellant was traveling about 80 mph prior to impact.
 {¶ 19} In addition, the State presented physical evidence as to the damage sustained by the vehicles, as well as, gouges and scrapes on the roadway.
 {¶ 20} Assuming arguendo, the trial court had abused its discretion in admitting the skid mark evidence, which we specifically already determined it did not, based upon the evidence presented at trial, appellant has not demonstrated the outcome of the trial would have been different but for the alleged error.
 {¶ 21} The first assignment of error is overruled.
 II. {¶ 22} In his second assignment of error, appellant asserts he was denied effective assistance of trial counsel.
 {¶ 23} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267.
 {¶ 24} First, appellant asserts his trial counsel failed to object to the State's introduction of the skid mark evidence discussed above. Appellant asserts the evidence appeared to have faded over time, and there was no indication when the marks were made.
 {¶ 25} Based upon our disposition of appellant's first assignment of error, counsel was not ineffective for failing to object to the evidence. A review of the record indicates the trial court would have overruled the motion, and counsel was not required to make a futile motion.
 {¶ 26} Second, appellant asserts his trial counsel was ineffective in basing his trial strategy on the negligence of others. Appellant argues the negligence of others is not a defense to a vehicular homicide charge unless the negligence of such other(s) is the sole cause. Appellant argues trial counsel should have based his strategy on demonstrating he was not speeding and was not violating any traffic laws.
 {¶ 27} As discussed in our disposition of appellant's first assignment of error, there was overwhelming evidence demonstrating appellant was traveling at a high rate of speed just prior to impact. Accordingly, we do not find appellant's counsel ineffective in not arguing appellant was not speeding and therefore not violating any traffic laws.
 {¶ 28} Finally, appellant asserts his trial counsel was ineffective for failing to advise him to accept the plea agreement offered by the State.
 {¶ 29} Appellant asserts the State offered him a plea agreement wherein, in exchange for his plea of no contest, the State would recommend a sentence of 30 days in jail, with work release, fines and costs, and probation, possibly non-reporting.
 {¶ 30} The following exchange occurred at the commencement of trial in this matter:
 {¶ 31} "The Court: Let's take a 15 — as quickly as you can do it, 15 to whatever lunch break.
 {¶ 32} "Mr. Cicero, this is not a threat. Just so we understand, when you walk out of here, there — I don't care what the prosecutor recommends from this point forward, I'm not — I'm not bound to, and I probably won't follow any recommended sentence after I walk out of here for lunch.
 {¶ 33} "Mr. Cicero: Your Honor, all I do is —
 {¶ 34} "The Court: Okay, I trust that you — I know you've had a lot of trial experience and I'm not faulting anyone here. But I don't want your client to go to lunch here with a mistaken impression, well, you know, if I just push a little harder or just ask the judge for this, it's going to happen. And I don't want anything said if there is ultimately a sentencing, if there is a finding of guilty, reminding me of this work release or, you know, the driving privileges or anything of that nature.
 {¶ 35} "Mr. Cicero: Your Honor, I don't think that there are going to be any more negotiations.
 {¶ 36} "The Court: Okay.
 {¶ 37} "Mr. Cicero: I'm certainly not going to ask for any more negotiations. We're negotiated out.
 {¶ 38} "The Court: Okay.
 {¶ 39} "Mr. Cicero: And Mr. — and while we're here, we should just put this on the record.
 {¶ 40} "The Court: We are on the record.
 {¶ 41} "Mr. Cicero: I know. But this wasn't on the record, and it really needs to be. Mr. Yonis was asked whether or not he would accept the following plea offer from the State of Ohio. To plead no contest to the charge of vehicular homicide, that was rejected by Mr. Yonis. A plea for 30 days in jail with work-release privileges. Mr. Yonis has rejected that. A fine and costs has been rejected. A period of probation, whether it was reporting or nonreporting, that was rejected. I believe that states the offer in the case.
 {¶ 42} "If that is the offer in the case that's been rejected, can you tell me? Is that the offer?
 {¶ 43} "Ms. Ridenour: That was the offer.
 {¶ 44} "Mr. Cicero: Mr. Yonis, what was your answer to that?
 {¶ 45} "The Defendant: No."
 {¶ 46} Tr. at 155-157.
 {¶ 47} Appellant argues his trial counsel should have realized the submission of alternative causes of the accident would not sufficiently defend the charges against him. Accordingly, he maintains counsel should have advised him to take the plea bargain.
 {¶ 48} As stated above, to succeed on a claim of ineffective assistance, it must be shown that counsel's performance was deficient and the defendant was prejudiced by this deficient performance. Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052.
 {¶ 49} Appellant's allegations of ineffectiveness of counsel in failing to recommend the plea bargain necessarily involve discussions between himself and his counsel. Such discussions are not evidenced in the record (although clearly alluded to by counsel), and we cannot review the communications, if any, that took place between them. "Any allegations of ineffectiveness based on facts not appearing in the record should be reviewed through the postconviction remedies of R.C. 2953.21." State v.Coleman, 85 Ohio St.3d 129, 134, 1999-Ohio-258, 707 N.E.2d 476.
 {¶ 50} Further, the trial court exchange outlined above adequately addressed the issue as to whether appellant knowingly, voluntarily and willfully rejected the plea bargain. It appears appellant is now merely hoping to change his decision on the plea offer in hindsight of the jury's verdicts.
 {¶ 51} Accordingly, appellant has not demonstrated prejudice as a result of counsel's alleged errors.
 {¶ 52} Appellant further asserts his trial counsel failed to object to improper prosecutorial statements made in closing arguments.
 {¶ 53} During closing, the prosecutor told the jury:
 {¶ 54} "And in making that decision, I want you to put yourself in the position of this stop bar with your family in that car and what you would expect out of a vehicle 367 feet away as I approached you."
 {¶ 55} Tr. at 671-672.
 {¶ 56} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990),51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990),498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168,106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 57} We find the prosecutor's comment asking the jurors to put themselves and their family in Goodin's position was improper. However, in light of all of the evidence presented at the trial, we do not find the comment sufficiently prejudicial to have affected the outcome of the trial or appellant's substantive rights.
 {¶ 58} Accordingly, appellant has not demonstrated a reasonable probability that, but for his trial counsel's individual or cumulative errors, the result of the proceeding would have been different.
 {¶ 59} The second assignment of error is overruled.
 III. {¶ 60} The third assignment of error maintains the trial court imposed a harsher sentence due to appellant's not accepting the plea agreement offered by the State.
 {¶ 61} Initially, we note "the decision as to the sentencing of a defendant is within the sound discretion of the trial court and the trial court is not bound by any plea agreement. * * * An appellate court will not reverse a trial court's exercise of discretion if the sentence imposed is within the statutory limit and the trial court considered the statutory criteria." State v.Tutt (1988), 44 Ohio App.3d 138.
 {¶ 62} Appellant asserts the trial court erred in imposing a harsher sentence in retaliation for appellant's exercising his right to trial. Specifically, appellant cites the following exchange:
 {¶ 63} "Mr. Cicero, this is not a threat. Just so we understand, when you walk out of here, there — I don't care what the prosecutor recommends from this point forward, I'm not — I'm not bound to, and I probably won't follow any recommended sentence after I walk out of here for lunch.
 {¶ 64} "Mr. Cicero: Your Honor, all I do is —
 {¶ 65} "The Court: Okay. I trust that you — I know you've had a lot of trial experience and I'm not faulting anyone here. But I don't want your client to go to lunch here with a mistaken impression, well, you know, if I just push a little harder or just ask the judge for this, it's going to happen. And I don't want anything said if there is ultimately a sentencing, if there is a finding of guilty, reminding me of this work release or, you know, the driving privileges or anything of that nature.
 {¶ 66} "Mr. Cicero: Your Honor, I don't think that there are going to be any more negotiations."
 {¶ 67} Tr. at 155-156.
 {¶ 68} A defendant should never be punished for exercising his right to trial or refusing to enter into a plea agreement.State v. O'Dell (1989), 45 Ohio St.3d 140. The imposition of a harsher punishment on a defendant for exercising his rights would impair the constitutional right to a trial by creating a chilling effect upon a defendant's ability to exercise his constitutional right. State v. Scalf (1998), 126 Ohio App. 3d 614.
 {¶ 69} Accordingly, a trial court may not augment a sentence because a defendant chooses to force the government to prove his guilt, "no matter how overwhelming the evidence of [defendant's] guilt." Id.
 {¶ 70} Upon our review of the facts and the entire record, and particularly, the aforementioned discussion between the trial court and appellants trial counsel, we do not conclude such affirmatively demonstrates the trial court punished appellant for exercising his right to trial and the trial court did not abuse its discretion in sentencing appellant within the statutory limit and properly considered the sentencing criteria.
 {¶ 71} The third assignment of error is overruled.
 IV. {¶ 72} Appellant's final assignment of error maintains the trial court improperly allowed Trooper Fred Cook to rehabilitate the prosecution's witness.
 {¶ 73} The following exchange occurred during the trial in this matter:
 {¶ 74} "Q. Okay. Thank you. One other — a couple other questions. In your experience as a trooper, have you had many occasions to interview individuals who have been involved in serious impact crashes?
 {¶ 75} "A. Yes, I have.
 {¶ 76} "Q. How many occasions do you suppose?
 {¶ 77} "A. Well, hundreds.
 {¶ 78} "Q. All right. And in doing that, did you find it uncommon for those involved in serious impact crashes to be unable to recall the crash?
 {¶ 79} "Mr. Cicero: Objection, Your Honor.
 {¶ 80} "The Court: Basis?
 {¶ 81} "Mr. Cicero: Can we approach?
 {¶ 82} "The Court: Yeah, you can approach. Trooper, just step back there for me for a second.
 {¶ 83} "(Whereupon, a bench conference was held off the record with Mr. Flautt, Ms. Ridenour, and Mr. Cicero.)
 {¶ 84} "The Court: Trooper, if you could, take the stand again. Before the prosecutor continues, all of us bring to life certain experiences and abilities and some of that is through formal training and some of it's through the school of hard knocks or experience.
 {¶ 85} "And so I'm going to permit the trooper to testify regarding — you earlier heard him tell you about how many years experience he's had investigating crash scenes, et cetera. You'll recall what that testimony was about, but I'm going to permit him to testify as to — as a part of that experience what he may have observed during those many investigations.
 {¶ 86} "And he can testify to that. But unlike a doctor or an M.D. — you heard Dr. Lee earlier, the pathologist, who had quite an impressive resume and through formal training, some — some witnesses or some of the evidence that you'll hear won't necessarily have that degree of formal education. But one can also have experience through observation and other means.
 {¶ 87} "And so I want you to — I want you to be careful in listening to his response to this question, not to confuse the — I'm not telling you that he's an expert in cognitive functions of people who have been traumatized or have had difficult experiences, but he — I will permit him, if he's able to tell you, what his observations have been in conducting these accident investigations. Mr. Flautt.
 {¶ 88} "By Mr. Flautt:
 {¶ 89} "Q. Thank you, Your Honor. Back up just a little bit, Fred. You indicated you had had experience in interviewing several witnesses involved in severe impact cases?
 {¶ 90} "A. Yes.
 {¶ 91} "Q. Okay. As far as — when would you interview these individuals?
 {¶ 92} "A. Usually, it's immediately afterward. It's — usually, if it's a severe crash, it's usually at the hospital. Sometimes it's days later depending on the severity of their injuries.
 {¶ 93} "Q. Okay. And have you seen any difference in — whether it's likely for someone to recall immediately after or a few days later?
 {¶ 94} "A. It varies.
 {¶ 95} "Q. Okay. So you — say you interview somebody at the hospital or immediately after such a crash, is it common or uncommon for someone not to be able to remember what happened?
 {¶ 96} "A. in serious impact crashes, it's — it's not uncommon for somebody to have missing memories in my experience.
 {¶ 97} "Q. And so you do the interview a day or days later, would your — would that be any different?
 {¶ 98} "A. That varies. Sometimes they have no greater memory of the event than they did at the time.
 {¶ 99} "Q. Okay.
 {¶ 100} "A. Other times they can piece together a little bit more.
 {¶ 101} "Mr. Flautt: Okay. Thank you. I have no further questions, Your Honor."
 {¶ 102} Tr. at 528-531.
 {¶ 103} Appellant asserts the trial court erred in allowing Trooper Cook to testify as to any possible alteration of a person's memory after witnessing an accident, which could explain contradictions in the witness' testimony at trial; thereby serving to rehabilitate the witnesses' credibility.
 {¶ 104} Upon our review of the record, we note the trial court properly cautioned the jury as to the limited use of Trooper Cook's testimony. We find the trial court did not abuse its discretion in admitting this testimony based on the trooper's past experiences.
 {¶ 105} The fourth assignment of error is overruled.
 {¶ 106} Appellant's conviction and sentence in the Perry County Municipal Court are affirmed.
Hoffman, J. Gwin, P.J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, appellant's conviction and sentence in the Perry County Municipal Court on one count of misdemeanor vehicular homicide are affirmed. Costs assessed to appellant.
[1] Appellant's argument is premised upon the belief a car equipped with properly functioning anti-lock brakes is incapable of leaving skid marks. As noted, no evidence was offered to support this premise and we highly question its validity.