[Cite as *State v. Crooms*, 2014-Ohio-2928.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NOS. 11 CO 17 |
| | ) | 12 CO 9 |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CHRISTOPHER CROOMS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
Common Pleas of Columbiana County,
Ohio
Case No. 10 CR 8

JUDGMENT:                                    Affirmed.

APPEARANCES:

For Plaintiff-Appellee:                    Atty. Robert Herron
Columbiana County Prosecutor
Atty. John E. Gamble
Assistant Prosecuting Attorney
105 South Market Street
Lisbon, Ohio  44432

For Defendant-Appellant:               Atty. Douglas A. King
Hartford, Dickey & King Co., LPA
91 West Taggart Street
P.O. Box 85
East Palestine, Ohio  44113

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  June 30, 2014

WAITE, J.

{¶1}   Appellant Christopher Crooms appeals his Columbiana County felony convictions for burglary and kidnapping.  In September of 2009, Appellant and two other men were driven to a recycling business in Summitville and proceeded to kidnap and burgle the owner of the business.  On appeal, Appellant alleges multiple violations of his constitutional rights in connection with a statement he made to police and the use of that statement at trial.  Appellant's nine assignments of error are without merit and are overruled.  The judgment of the trial court is affirmed.

Factual and Procedural History

{¶2}   Larry Haupt, then 72, and his 54 year old stepson, Ronald Jackson, lived together in a trailer next to Haupt's recycling business in the Village of Summitville, Columbiana County, Ohio.  Haupt takes care of Jackson, who is developmentally disabled.  Haupt runs his business on a cash basis and keeps his receipts in a safe in his trailer.

{¶3}   On the evening of September 21, 2009, Appellant and two other men, Brian Wood, Jr., and Shorty McVay, were dropped off in a field near Haupt's trailer by a fourth man, Michael Mercer.  The three men watched Haupt as he concluded his business for the day, returned to the trailer, and turned out the lights at around eleven o'clock.  They waited until 1:30 in the morning, when one of the group approached the trailer, knocked, and asked to use the phone.  Haupt told the man he could not come into the house, but that he would come out and get a phone from the shop for him to use.  Haupt left the trailer and retrieved a phone from the shop.  When he handed the phone to the man, the man put a pistol to his head and told

Haupt "[w]e're going inside." (Tr. Vol. I, p. 191.) Haupt was able to observe the unmasked man who was holding the gun to his head and a second "tall thin" masked man who had originally been standing near the bottom of the ramp with his back to the trailer when his partner requested the phone. (Tr. Vol. I, p. 193.) Appellant is the only member of the group involved that night who matches the physical description given by Haupt of the tall thin man.

{¶4} The group entered the trailer to find Jackson standing in the kitchen with a rifle. According to Haupt, the tall thin masked man, who also had a pistol, began to yell that he would kill them both. Haupt told his stepson to put the gun down. When he complied, the intruders bound and gagged the pair with duct tape brought along for that purpose. (Tr. Vol. I, pp. 194-197.) The men located the safe and threatened Haupt until he agreed to open it, which required the men to remove some of the tape binding him. (Tr. Vol. I, p. 199.) One of the men re-bound Haupt, and then joined the others as they took the contents of the safe, which represented Haupt's life savings. The men also searched the rest of the trailer, and attempted to disable the telephones.

{¶5} Haupt described the unmasked man's surprise at the amount of cash in the safe, approximately fifty thousand dollars, and said that the men left between ten and fifteen thousand behind. He also describes being particularly frightened by the behavior of the tall thin man, who he thought was the most dangerous of the group. (Tr. Vol. I, pp. 198, 229-230.)

{¶6} Initially, because the unmasked intruder was not known to either victim and all of the intruders wore gloves, the investigating officers were unable to develop any suspects for the crime. About three months later, another man in the area was robbed by multiple masked assailants. The officer investigating the later incident was able to develop a suspect and connected the crime with the earlier Haupt burglary. One of the individuals taken into custody in the later crime led the officer to a woman who owned the house where the intruders divided the money taken from the Haupt trailer. The woman and the suspect assisted the officer, who was then able to develop multiple leads in the Haupt burglary investigation. Testimony from the officer described three of the suspects as short and two of the three as stocky (McVay and Wood), while the fourth, Appellant, is tall, approximately 6'4", and thin. According to the testimony of a defense witness, the four men used the proceeds of the crime to purchase controlled substances, so the funds could not be recovered.

{¶7} Appellant was indicted by the Grand Jury on one count of aggravated burglary and two counts of kidnapping. Each count included a firearm specification. At trial, Appellant did not dispute any of the events of late September 21 through the early morning of September 22, 2009. Instead, Appellant argued that he was not a willing participant in the robbery, but could not refuse due to fear of the other three men involved. Appellant's defense theory was consistent with the pre-trial statement he gave police after his arrest.

{¶8} Appellant was convicted on all three counts and sentenced to ten years in prison for aggravated burglary, a first degree felony; ten years for the first count of

kidnapping (also a first degree felony); ten years for the second kidnapping count, a first degree felony; and three years for the firearm specifications. Appellant's three, ten-year sentences were to be served concurrently to one another, but consecutive to the firearm specification term, for a total sentence of thirteen years. Appellant filed a timely appeal of this sentence.

Assignment of Error One

THE TRIAL COURT ERRED BY FAILING TO GRANT THE DEFENDANT/APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO OHIO CRIMINAL RULE 29 MADE AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF.

{¶9} Appellant contends that the trial court should have granted his motion for acquittal at the close of the state's case. Motions for acquittal are governed by Crim.R. 29(A) which provides:

**Motion for judgment of acquittal.** The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶10} Pursuant to Crim.R. 29, a trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach

different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978) syllabus. "A motion for judgment of acquittal under Crim. R. 29(A) should be granted only where reasonable minds could not fail to find reasonable doubt." *State v. Apanovitch*, 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399 (1987). When reviewing the decision to deny a motion for acquittal, the Ohio Supreme Court applies the same test used to evaluate the sufficiency of the evidence:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, [1979] followed.)

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶11} At trial, Appellant's motion for acquittal was made at the close of the state's case, as follows:

> At this time I'd move for acquittal. I don't believe the State has presented sufficient evidence of each one of the elements as far as

aggravated burglary and the two kidnappings as well as the gun specification.

(Tr. Vol. II, p. 257.) The motion was overruled. The trial judge asked counsel if he wanted to put any specifics as to the motion on the record, and counsel declined. (Tr. Vol. II, p. 258.) On appeal, Appellant does not address the general areas identified in support of the motion at trial and instead argues that the acquittal was merited because the state did not include an in-court identification of the defendant, either as the "tall thin" man involved in the robbery on September 21, 2009 or as the individual who signed a statement on January 27, 2011 admitting his involvement in the crime. Appellant has waived both arguments, however, by failing to present either as the basis of his Rule 29 motion in the trial court.

**{¶12}** An error that is not called to the attention of the trial court at the time when the error could have been avoided or corrected is "usually treated as a waived error on appeal." *State v. Irby*, 2004-Ohio-5929, ¶12, citing *State v. Hill*, 92 Ohio St.3d 191, 196, 749 N.E.2d 274 (2001). In this matter, as in *Irby*, counsel did not specify the reason for seeking the Crim.R. 29 motion, even when specifically asked. Here, as in *Irby*, the failure to do so results in waiver.

**{¶13}** In addition to waiving these arguments, Appellant has neglected to offer any supporting authority for his contention that an in-court identification by a witness is a necessary element of the state's case. Appellant's belief that references to him as "the defendant" and "Christopher Crooms" are insufficiently specific is equally devoid of legal support. Moreover, Appellant's defense theory directly contradicts

this acquittal argument. At trial, Appellant admitted his participation in the crimes, but claimed that he was coerced.

{¶14} Even if Appellant had preserved the alleged error and presented legal support for the argument in his brief, there is "no general requirement in criminal cases that the defendant must be visually identified by a witness." *Irby*, *supra*, ¶14. Instead, any "type of direct or circumstantial evidence may be used to establish the identity of the person that committed the crime." *Id.* We have previously noted that an in-court identification is a "less reliable indicator of identity than many other types of identification." *Id.* citing *State v. Reaves*, 130 Ohio App.3d 776, 783, 721 N.E.2d 424 (1998). "Identity may be established by direct evidence, but direct evidence of identification is not required; circumstantial evidence may be sufficient to establish the identity of accused as the person who committed the crime." *State v. Scott*, 3 Ohio App.2d 239, 244-245, 210 N.E.2d 289 (1965).

{¶15} A review of the record reveals that Appellant was identified as the perpetrator of the crime prior to the closing of the state's case in chief. There is no dispute that Appellant is Christopher C. Crooms and was the defendant at trial, present in the courtroom throughout the proceedings. The victim testified as to the tall thin man waving a gun, the man he most feared during the robbery. (Tr. Vol. I, pp. 193, 198, 226-227; 229-230.) Haupt described differences in the physical characteristics of the masked men, which was primarily height and weight. The testimony of the investigating officer corroborated Haupt's recollections. The officer described the group of four suspects with differing physiques, one of whom was

Appellant Christopher Crooms. (Tr. Vol. II, pp. 236-240.) The officer's testimony explained why Appellant, not one of the other three men, was the tall thin man described by Haupt. Most importantly, the record contains Appellant's admissions in regard to the crime. The officer also explained Appellant's contact with him after his arrest, and Appellant's request for the meeting that resulted in the recorded admissions played for the jury. The jury heard Appellant describe his relationships with the other three men and his version of his involvement in the September 21, 2009 robbery of the Haupt residence in the recording. (Tr. Vol. II, pp. 242-246; State's Exh. 42 and 42a.) The material placed in the record, Appellant's own admission, and the defense theory of coercion individually and collectively establish Appellant's presence during and participation in the burglary and kidnapping. Appellant's first assignment of error is without merit and is overruled.

<u>Assignment of Error Two</u>

DEFENDANT/APPELLANT WAS DENIED DUE PROCESS OF LAW AND EQUAL PROTECTION UNDER THE LAW WHEN THE TRIAL COURT FAILED TO RENDER A DECISION WITH REGARD TO THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS THE CONFESSION, SAID MOTION TO SUPPRESS BEING BASED UPON THE DEFENDANT/APPELLANT'S FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION AND SIXTH AMENDMENT RIGHT TO COUNSEL UNDER THE UNITED STATES CONSTITUTION MADE

APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Assignment of Error Three

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE GOVERNMENT'S FEBRUARY 2, 2012 MOTION TO CORRECT OR MODIFY THE RECORD PURSUANT TO APPELLATE RULE 9 (E).

Assignment of Error Four

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT AS THE SAME WAS OBTAINED IN VIOLATION OF HIS FIFTH AMENDMENT AND/OR SIXTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION, AS WELL AS THEIR COUNTERPARTS UNDER THE OHIO CONSTITUTION.

{¶16} Appellant's second, third, and fourth assignments of error all address the trial court's handling of his motion to suppress and the supplementation of the record relevant to that motion, thus, they will be considered together.

(A)  Ruling on the Motion to Suppress

{¶17} Appellant originally filed a timely motion to suppress in 2011.  A motion to suppress is governed by Crim.R. 12(C)-(F) which provides:

Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:

* * *

(3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained. Such motions shall be filed in the trial court only.

* * *

(D) **Motion date**. All pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial

* * *

(F) **Ruling on motion**. The court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means.

A motion made pursuant to [division (C)(3)] of this section shall be determined before trial.

As Appellant notes, the record of proceedings in the trial court includes a transcript of the suppression hearing, but no written record of the trial court's ruling on the suppression motion. Appellant attempts to advance the argument that because the record is lacking a written denial of the motion to suppress, Appellant was denied due

process. Appellee sought and received leave to supplement the record as to this issue. However, even without the supplementary material, the record abundantly reflects that the motion was denied.

{¶18} Generally, "[w]hen a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it." *State v. Smith*, 7th Dist. No. 97 C.A. 37, 2000-Ohio-2654, *4; *accord*, *inter alia*, *State v. Lawson*, 9th Dist. No. 21227, 2003-Ohio-1299 (presume denial of motion to suppress); *State v. Chandler* , 10th Dist. No. 07AP-269, 2007-Ohio-5579; *State v. Moore*, 11th Dist. No. 2009-A-0024, 2010-Ohio-2407. This record, which includes the motion, a suppression hearing transcript, the commencement of trial, use of the disputed evidence during the trial, and entry of the verdict without any renewal of the motion or request for findings underlying the ruling, clearly reveals that the motion was denied. Further, Appellant, himself, concedes that the motion was denied in his fourth assignment of error. This record reflects no error in connection with Appellant's motion to suppress. It is axiomatic in Ohio that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1960) paragraph one of the syllabus. This record does not reflect a due process error in connection with the denial of Appellant's motion to suppress.

(B)  Appellant's Statement

**{¶19}** In Appellant's fourth assignment of error he concedes that the trial court denied Appellant's motion to suppress, and focuses on the propriety of the ruling. Appellant argues that the officers who took the statement containing his admission misrepresented to Appellant that he had no right to counsel at the time he made his admissions and that his statement was induced by an improper promise of a shorter sentence. Both of these arguments were raised in Appellant's motion to suppress and heard by the court in the suppression hearing. At that hearing, the trial court heard testimony from Detective Sergeant Walker, who conducted the original interview of Appellant on January 10, 2010.

**{¶20}** The transcript of Appellant's original interview reflects that the officer confirmed that Appellant could read, gave him a *Miranda* form informing him of his rights, and then read him his rights. Appellant signed the *Miranda* form, and told Walker that he was invoking his right to counsel, and would not speak to the officer without an attorney present. Walker stated that he told Appellant he would let the prosecutor know Appellant was cooperative if he gave a statement. According to Walker, he did not offer Appellant anything in exchange for his statement, make any promises to Appellant in exchange for a statement, or in any way limit his willingness to inform the prosecutor if Appellant was cooperative. Appellant still refused to give a statement. Walker then returned Appellant to the booking area.

**{¶21}** Appellant was subsequently found to be indigent and counsel was appointed on January 11, 2010 to represent him at his preliminary hearing. On January 21, 2010, Appellant appeared with counsel at the hearing. During the

preliminary hearing the county municipal court judge found probable cause that a felony had been committed and referred the matter to common pleas court for further proceedings. The judge also granted Appellant's motion to proceed *pro se*, and discharged Appellant's appointed counsel.

{¶22} On January 24, 2010, three days after his hearing and the discharge of counsel and two weeks after the initial interview, Appellant sent messages to Walker and a second officer requesting that the officers meet with him again so that he could give a statement. Before responding to Appellant's request, Walker contacted the prosecutor's office and asked whether Appellant had counsel. Walker was informed that Appellant was not represented. New counsel was not appointed for Appellant until his arraignment on March 24, 2010. With the knowledge that Appellant was not represented, Walker and the other officer responded directly to Appellant and agreed to meet with him as requested. The second interview occurred on January 27, 2010.

{¶23} The transcript of the second interview, produced during the suppression hearing, reveals that Appellant was again read his *Miranda* rights, initialed a second *Miranda* statement, and then waived his *Miranda* rights. Walker specifically asked Appellant whether he wanted an attorney present during his statement. Appellant indicated that he was concerned about the timing of his statement and asked if he would "have to wait a long time to get the lawyer to be here" with him. (Supp. Hrg., Exh. 3, p. 2.) Walker responded that he would have counsel appointed at his arraignment, but then asked if Appellant wanted a lawyer "here," as opposed to waiting until the arraignment. Appellant did not clearly respond. Walker informed

Appellant that they already had statements from the other men involved in the incident and would recognize discrepancies. Appellant then gave a statement discussing his participation in the robbery, emphasizing that the gun he carried was a cap gun that looked real, and that he repeatedly apologized to the older man during the robbery.

**{¶24}** On appeal, Appellant omits the information in the record pertaining to the appointment and requested discharge of counsel as well as Appellant's stated intention to proceed *pro se*, and alleges that Walker infringed on Appellant's right to counsel by granting Appellant's request to meet. This record does not reflect that the officers misrepresented Appellant's right to counsel at the time of the interview. The record does reflect that Appellant was informed of his right and offered counsel "here" in the room where the meeting took place. Appellant offers no other argument in support of his contention that his Sixth Amendment right to counsel was violated.

**{¶25}** "If a suspect in a criminal investigation requests counsel at any time during questioning, he is not subject to further interrogation until a lawyer is provided or the subject reinitiates the interrogation." *State v. Heness*, 79 Ohio St.3d 53, 63, 679 N.E.2d 686 (1997). It was Appellant, and not Walker, who initiated the second interview. When Walker was informed that Appellant was not represented, Appellant's right to counsel was again discussed with him, satisfying the *Miranda* requirements and establishing that the interview was voluntary.

**{¶26}** "Full comprehension of the rights to remain silent and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation

process." *Id.* at 63, citing *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350 (1994). "A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted." *Heness* at 63. Prior to initiating contact for the second interview, Appellant had counsel appointed, attended his preliminary hearing with counsel, announced his intention to proceed *pro se*, and had counsel discharged. After seeking an interview with police but prior to making a statement, Appellant was again offered counsel "here," where the questioning was about to occur. He declined and signed a waiver of his right to counsel. This record reveals that Appellant's waiver of his right to counsel was knowing, intelligent, and therefore valid. *Heness*, *supra*. This record does not support Appellant's contention that a violation of his Sixth Amendment right to counsel occurred. *Heness*, *supra*.

(C) Supplementing the Record.

**{¶27}** Finally, although the record reflects and Appellant concedes that his motion to suppress was denied, Appellant argues that the state should not have been allowed to supplement the record to demonstrate that fact. App.R. 9(E), "Correction or modification of the record," provides:

> If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, or the trial court,

either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

The authority to correct the record is determined by the nature of the material offered. If the "accuracy of [the] proposed changes is undisputed" then "[a] court of appeals can authorize correction or supplementation." *State v. Schiebel*, 55 Ohio St.3d 71, 82, 564 N.E.2d 54 (1990), citing *In re Estate of Reeck*, 21 Ohio St.3d 126, 488 N.E.2d 195 (1986).

**{¶28}** A court of appeals "cannot resolve disputes about the trial court's record in the course of an appeal;" any dispute concerning what occurred in the trial is a conflict "for the trial court to resolve in its sound discretion." *Schiebel* at 82. A trial court's decision when evaluating conflicting evidence concerning the state of the record "rests upon the court's ability to weigh the evidence." *Id.* "Where it is supported by competent, reliable evidence, [the decision to correct or supplement the record] will not be reversed by a reviewing court absent an abuse of discretion." *Id.*

**{¶29}** Appellant does not challenge the accuracy of the draft journal entry (admittedly unsigned and never filed) and testimony provided by the state and by Appellant's former counsel during the hearing on the state's motion to supplement or correct the record. Appellant argues, however, that the record from the trial court

shows no written ruling on the motion to suppress was journalized. Appellant believes that supplementing the record with any evidence tending to show that the motion was denied would directly conflict with the record. Appellant's argument mistakes both the significance of the absence of a journalized ruling and the purpose of App.R. 9(E).

{¶30} The absence of a journalized ruling on a pre-trial motion followed by a trial and the entry of a verdict without a renewal of the motion, or a motion seeking a written ruling on the motion, amounts to a decision that the motion was denied and serves to waive any argument in connection with that denial. *Smith*, *supra*, *inter alia*. The state's motion to supplement the record allows the introduction of material to demonstrate the trial court's intention to journalize an entry denying the motion, Appellant's knowledge of that decision, as well as the fact that trial counsel understood that the motion was denied. (Motion Hrg. Tr., pp. 22-23; 26-27; 29-30.) Appellant did not present any contradictory testimony or evidence at the motion hearing and did not dispute the facts as presented by the state.

{¶31} Appellant now contends that the trial court's intent to deny his motion, which was admittedly communicated verbally to Appellant and Appellant's counsel, and was further demonstrated when the court circulated a draft entry denying the motion and gave extensions of time to prepare for trial, does not accurately reflect the actions of the trial court. Appellant relies on an Ohio Eighth Appellate District decision in support of this argument. *Woodman v. Tubbs-Jones*, 103 Ohio App.3d 577, 660 N.E.2d 520 (8th Dist.1995).

{¶32} Appellant's reliance on *Woodman* is misplaced. The App.R. 9(E) motion in *Woodman* was denied because the party attempted to introduce material that was never submitted to the trial court. As the *Woodman* court explains:

> We must deny this motion, because App.R. 9(E) can only be used to correct or modify what occurred on the trial court record. The indictments were never filed with the trial court in this case. A court cannot take judicial notice of court proceedings in another case.

*Id.* at 580, citing *Diversified Mtge. Investors, Inc. v. Athens Cty. Bd. of Revision*, 7 Ohio App.3d 157, 454 N.E.2d 1330 (1982) ("A trial court may not take judicial notice of prior proceedings in the court, but may only take judicial notice of prior proceedings in the immediate case." *Id.* at paragraph two of the syllabus).

{¶33} The request to supplement the record in this case did not involve an attempt to add material to the record that was not ever produced for the trial court's consideration. Instead, this request sought to allow the addition of material that clarifies pre-trial proceedings in this matter. It involves documents actually generated by the trial court, even though not journalized due to court oversight. It sought to highlight and eliminate possible confusion created by the retirement of the original trial judge, transfer of the matter to another judge prior to trial, substitution of counsel for Appellant prior to trial but after the suppression motion hearing, and the absence of a written entry in the record on the final disposition of the motion suppress.

{¶34} Appellant offers no legal reason why the material should be excluded. He simply argues that App.R. 9(E) should not apply to allow any change in the record

if there is a change in the judge presiding over a matter in the trial court. Applying App.R. 9(E) as Appellant advocates would obviate the purpose of the rule, which is to allow correction or supplementation to ensure that the final record reflects what actually happened, as opposed to what was initially journalized. The supplemental material reflects that the denial of the motion was communicated by the trial court to Appellant and Appellant's counsel prior to trial, and that Appellant and Appellant's prior counsel communicated that denial to Appellant's subsequent trial counsel. Appellant does not offer any basis for us to conclude that it was an abuse of discretion for the trial court to allow the record to be supplemented on these issues. Where, as here, there is competent, reliable, information to support a trial court's decision to supplement or correct the record, that decision should not be reversed absent an abuse of discretion. *Schiebel*, *supra*. We find no abuse of discretion in this record.

**{¶35}** Appellant's second, third, and fourth assignments of error concerning the trial court's denial of his motion to suppress his statement and to allow the supplementation of the record are without merit. The trial court did not abuse its discretion in denying the motion or in supplementing the record to clarify the circumstances of that denial. Appellant's second, third, and fourth assignments of error are overruled.

<u>Assignment of Error Five</u>

DEFENDANT/APPELLANT'S CONVICTION MUST BE REVERSED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.

**{¶36}** "Reversal of convictions for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense in such a way as to deprive the defendant of a fair trial." *State v. Ferguson*, 108 Ohio St.3d 451, 462, 2006-Ohio-1502, 844 N.E.2d 806, ¶75, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed .2d 674, (1984). "Deficient performance" means performance falling below an objective standard of reasonable representation. "Prejudice," in this context, means a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.* at 687-688, 694. In evaluating the performance of counsel, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-691.

(A) In-court Identification

**{¶37}** Appellant contends that trial counsel's performance was deficient because counsel did not adequately challenge the failure to specifically identify Appellant as a perpetrator, and because Appellant did not assert his Fifth Amendment right not to testify due to this alleged deficiency. The alleged deficiencies will be evaluated under the two-pronged *Strickland* test.

**{¶38}** As previously discussed, "there is no general requirement in criminal cases that the defendant must be visually identified in court by a witness." *Irby*,

*supra*, ¶14. Rather than acquit every defendant who kills his victim, attacks from behind, or wears a mask for the duration of the crime, courts allow "[a]ny type of direct or circumstantial evidence * * * to establish the identity of the person that committed the crime." *Id.* Among the numerous logical and factual reasons why direct in-court identification is not required is the fact that "an in-court identification is a less reliable indicator of identity than many other types of identification." *Id.*

{¶39} In this instance, the jury was asked to determine whether Appellant was the "tall thin" man described by Haupt who participated in the attack and burglary. The jury concluded that he was. The record contains testimony from Haupt, various investigating officers, Appellant and Appellant's witnesses, all of whom connect Appellant directly and indirectly as a perpetrator of these crimes. Importantly, the record also contains Appellant's admissions in this regard. Because there is no legal requirement that identity be established by eyewitness testimony or direct identification at trial, the fact that Appellant's counsel did not challenge the absence of eyewitness identification testimony is not evidence of deficient performance. *Irby*, *supra*. Since the defense trial strategy focused on establishing that Appellant was a participant in the crimes, but not a willing participant, trial strategy would actually prohibit counsel from challenging Appellant's identity as a participant in the crime.

{¶40} The state offered probative circumstantial evidence of Appellant's identity which was properly submitted to the jury. Appellant's trial counsel was not deficient because he omitted an argument that has no basis in law. Similarly, the fact that trial counsel did not induce Appellant to assert his Fifth Amendment rights based

on lack of eyewitness identification rather than permit him to testify cannot serve as evidence that counsel's performance was deficient.

(B)  Motion to Suppress

{¶41} The United States Supreme Court originally explained in *Strickland v. Washington* that an "ineffectiveness claim * * * is an attack on the fundamental fairness of the proceeding whose result is challenged * * * the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."  *Strickland* at 697, 670.  A defendant's burden when challenging the effectiveness of counsel is to demonstrate that some action or inaction by counsel operated to undermine or call into question the integrity of the process that resulted in conviction.  *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E. 2d 905 (1999).  When evaluating the performance of counsel "courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶81.  "Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland* at 669.  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

**{¶42}** Appellant also argues that trial counsel's performance fell below an objective standard of reasonableness because "trial counsel failed to insist that the trial court issue a decision on the Defendant/Appellant's motion to suppress/in limine[sic] and thereafter failed to object to the admission of the Defendant/Appellant's alleged confession." (Appellant's Brf., p. 35.) Appellant also states that "serious constitutional violations were raised by that motion to suppress" and that "factual findings were required to resolve those issues." (Appellant's Brf., p. 35.) As the Ohio Supreme Court explained in *State v. Brewer,* 48 Ohio St.3d 50, 549 N.E. 2d 491 (1990), a trial court's failure to state findings of fact on the record when denying a motion to suppress is error. However, where there is a robust record of the suppression hearing such as we have before us, the absence of stated findings of fact does not prevent a full review of "suppression issues." *Brewer*, *supra*, at 51. As in *Brewer*, the suppression decision here was based on the trial court's credibility determination. As in *Brewer*, when "overruling the motion to suppress, the trial court impliedly found that the police officers' testimony was credible" and Appellant's was not. *Id.* at 59.

**{¶43}** The omission of findings of fact and the absence of a written ruling on the motion to suppress are errors or omissions by the trial court, not errors of counsel, and they are not errors that necessarily prejudice the defendant or hamper review. *Brewer, accord; State v. Waddy*, 63 Ohio St.3d 424, 443, 588 N.E.2d 819

(1992). Because the "extensive record of the suppression hearing is 'sufficient to allow full review of the suppression issues,'" Appellant "cannot show a reasonable probability that the result would have been different if his counsel had requested findings under the wording of Crim.R. 12(F)." *State v. Sapp*, 105 Ohio St.3d 104, 119, 2004-Ohio-7008, 822 N.E. 2d 1239, ¶96.

{¶44} None of the alleged deficiencies cited by Appellant concerning his statement reflect a defect in the fundamental fairness of his trial. This record reflects that the trial court denied the motion to suppress and that counsel knew the motion was denied and was prepared to try the case. This record also reveals that the trial court had a full hearing on Appellant's suppression motion. Appellant was present and testified, and his counsel argued on his behalf. Appellant does not claim that there was any defect in that process or suggest that the preparation of his defense was hampered by the absence of a written ruling. Nothing in this record supports a conclusion that the trial court's denial of Appellant's motion to suppress would have been reversed if counsel had requested factual findings and a written ruling.

{¶45} Similarly, with regard to the admission of Appellant's statement into evidence at trial, trial counsel is not required to perform acts or make requests that he knows to be useless. *State v. Matland*, 2010-Ohio-6585, ¶51. "As to appellant's argument that trial counsel failed to object * * * there is no ineffective assistance of counsel when trial counsel fails to do what would have been a futile act." *State v. Menton*, 7th Dist. 84 CA 21, 1987 WL 5710, *3 (1987). "A review of the record indicates the trial court would have overruled the motion, and counsel was not

required to make a futile motion." *State v. Yonis*, 2006-Ohio-5993, ¶25. Trial counsel was aware that the motion to suppress was denied. The trial transcript reveals that the state put in place a proper foundation prior to requesting that the statement be admitted. Trial counsel was also aware that Appellant did not deny the allegations and intended to testify concerning his presence during and participation in the burglary and kidnappings. Under these circumstances it is probable, and reasonable, for trial counsel to conclude that a motion to exclude the statement would be futile and strategically flawed. Counsel's decision not to further challenge the admission of Appellant's statement was not error and his performance did not fall "below an objective standard of reasonable representation." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Appellant has also failed to demonstrate prejudice as a result of trial counsel's decisions. Appellant's fifth assignment of error is without merit and is overruled.

Assignment of Error Six

> THE DEFENDANT/APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE JURY CLEARLY LOST ITS WAY AND BASED ON THE EVIDENCE PRESENTED SHOULD HAVE FOUND THAT DEFENDANT/APPELLANT ACTED UNDER DURESS.

{¶46} To determine whether sufficient evidence exists to support a conviction, the reviewing court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime proven beyond a reasonable doubt." *Jenks*, *supra*, paragraph two of the syllabus. In determining whether a criminal judgment is against the manifest weight of the evidence, this Court acts as a "thirteenth juror" to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). The verdict is not against the weight of the evidence when there is evidence which, if believed, will convince the average person of the accused's guilt beyond a reasonable doubt. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978). "Weight is not a question of mathematics, but depends on its *effect in inducing belief*." *State v. Barnhart*, 7th Dist. No. 09 JE 15, 2010-Ohio-3282, ¶24, quoting *Thompkins*, *supra*, at 387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶47} Appellant contends that the trier of fact should have concluded that the testimony of his witnesses was more credible than the testimony of the state's witnesses. Appellant does not identify any defect in the state's case, he simply argues that the jury should have believed him. A review of the record shows that Haupt testified extensively about his perceptions of the three men who kidnapped, held, threatened, and questioned him while they burgled his house. Haupt's testimony created a vivid picture of a tall thin man who enthusiastically and

terrifyingly participated in the threats and violence of that night. Where, as here, there are two conflicting versions of events, the decision to believe one version over the other is left to the jury. In this instance, the jury chose to believe the testimony of the victim rather than Appellant and his witnesses. Nothing in this record suggests that the jury lost its way in determining credibility. *DeHass, supra.* Appellant's sixth assignment of error is without merit and is overruled.

<u>Assignment of Error Seven</u>

DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL AND THEREFORE DUE PROCESS BECAUSE OF PROSECUTORIAL MISCONDUCT.

**{¶48}** The standard of review for prosecutorial misconduct is whether the actions by the prosecution were improper and, if so, whether they prejudiced Appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). "In determining whether the prosecutor's statements affected a substantial right of the defendant, an appellate court should consider the following factors: '(1) the nature of the remarks; (2) whether an objection was made by defense counsel; (3) whether the court gave any corrective instructions; and (4) the strength of the evidence presented against the defendant.'" *State v. Scott*, 7th Dist. No. 07 MA 152, 2009-Ohio-4961, ¶85, quoting *State v. Breland*, 11th Dist. No. 2003-A-0066, 2004-Ohio-7238, ¶29. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived Appellant of a fair trial based on the entire record. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293

(1990); *State v. Skidmore*, 7th Dist. No. 08 MA 165, 2010-Ohio-2846, ¶44; appeal not allowed, 2010-Ohio-4928, 126 Ohio St.3d 1602, 935 N.E.2d 47. The test for prosecutorial misconduct focuses on "the fairness of the trial, not the culpability of the prosecutor." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶91.

**{¶49}** Appellant's seventh assignment of error alleges prosecutorial misconduct in closing arguments due to the prosecutor's reference that Appellant failed to take "responsibility for his actions." (Appellant's Brf., pp. 40-41). Appellant contends that these statements are a comment on Appellant's decision not to plead guilty and instead to exercise his Sixth Amendment right to a jury trial. The state contends that these statements highlighted the fact that the other men who took part in the kidnappings and burglary admitted their involvement, unlike Appellant, who claimed to have acted under duress. Appellant does not explain, and nothing in the record indicates, how these comments could impact Appellant's substantial right to a jury trial, which is the only right identified by Appellant in support of his argument.

**{¶50}** Unlike improper comment on a defendant's decision to invoke his Fifth Amendment right not to testify, which is clearly misconduct, or the more speculative contention that a sentence imposed by a trial court after a jury trial is a "trial tax" on a defendant, comment by a prosecutor on a defendant's decision to plead not guilty has never been found to deprive a defendant of a fair trial. Appellant offers no legal basis for this argument. It is impossible to conclude from this record that the statement had the significance Appellant claims. Appellant's seventh assignment of error is without merit and is overruled.

Assignment of Error Eight

DEFENDANT/APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL PURSUANT TO THE DOCTRINE OF CUMULATIVE ERROR.

**{¶51}** Appellant contends that each of the errors identified in his preceding assignments rise to the level of reversible error, but even if they are individually found to be harmless, their cumulative effect deprived Appellant of a fair trial. However, errors do not become prejudicial "by sheer weight of numbers." *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶241. Although cumulative error may "be found when the effect of multiple errors * * * acts to deprive the defendant of his constitutional right to a fair trial;" an assignment of error "that simply intones the phrase 'cumulative error' but offers no analysis or argument constitutes an assignment of error without substance." *State v. Scott*, 7th Dist. No. 07 MA 152, 2009-Ohio-4961, ¶92-93 (citing *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 150 (1995) and *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150).

**{¶52}** Appellant's seven preceding assignments of error are without merit and do not identify any error in the proceeding below. Even if errors became prejudicial by sheer weight of numbers, no such number exists, here. Appellant was not prejudiced by the denial of his motion to suppress his pre-trial statement, the state did not fail to present sufficient evidence connecting him with the crimes he admitted to participating in, the jury was entitled to weigh the evidence presented and determine credibility, the prosecutor's statements concerning responsibility did not undermine Appellant's right to a trial, and the record below was properly

supplemented. Appellant's eighth assignment of error is without merit and is overruled.

### Assignment of Error Nine

THE TRIAL COURT ERRED IN SENTENCING DEFENDANT/APPELLANT BEFORE THE COMPLETION OF A PRESENTENCE INVESTIGATION.

**{¶53}** Crim.R. 32.2 governs the use of presentence investigations, it provides: "[i]n felony cases the court shall, and in misdemeanor cases the court may, order a presentence investigation and report before imposing community control sanctions or granting probation." The trial court's sentence in this matter did not impose community control or grant probation in lieu of sentence. The trial court imposed three, ten year sentences to be served concurrently, and a three year firearm specification to be served consecutively to the concurrent sentences. Where a trial court does not grant probation, no presentence report is required. *State v. Cyrus*, 63 Ohio St.3d 164, 586 N.E.2d 94 (1992), syllabus. Appellant's ninth assignment of error is overruled.

### Conclusion

**{¶54}** Appellant's pre-trial statement was not taken in violation of his Fifth and Sixth Amendment rights and the trial court properly denied Appellant's motion to suppress this statement. It was not error to supplement the record with regard to the motion to suppress. Appellant received effective assistance of counsel. His conviction was not against the weight of the evidence and his motion for acquittal

was properly denied.  The record does not reflect prosecutorial misconduct.  No presentence report was required in this matter.  Appellant's nine assignments of error are without merit and are overruled.  The judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.